815 F.2d 232
 REPUBLIC NATIONAL BANK OF NEW YORK, Plaintiff-Appellant,
v.
EASTERN AIRLINES, INC., Defendant-Appellee-Third-Party Plaintiff,
v.
Joseph DELGAIS, Richard Delgais, Paul Cellura, William
Adams, Joseph Telfel, Jr., Wells Fargo Armored
Service Corp., and Renzo Baronti,
Third-Party Defendants.
 No. 575, Docket 86-7706.
 United States Court of Appeals,
Second Circuit.
 Argued Dec. 15, 1986.
Decided March 30, 1987.
 
 Arnold Stream, New York City (Stanley H. Solomon, Standard, Weisberg, Heckerling & Rosow, New York City, of counsel), for plaintiff-appellant.
 Frank B. Gass, Port Washington, N.Y. (Patricia S. Orr, Gass, Gillen & Caliendo, Port Washington, N.Y., of counsel), for defendant-appellee-third-party plaintiff.
 Before MESKILL, KEARSE and ALTIMARI, Circuit Judges.
 MESKILL, Circuit Judge:
 
 
 1
 Plaintiff Republic National Bank of New York (Republic) appeals from those portions of a judgment entered in the United States District Court for the Southern District of New York, Conner, J., that granted defendant Eastern Airlines' (Eastern) motion for partial summary judgment permitting Eastern to stipulate to payment of $634.90 in settlement of its liability under the Warsaw Convention. Republic also appeals the denial of its cross-motion for summary judgment, 639 F.Supp. 1410.
 
 
 2
 Republic brought this action to recover $2 million for United States currency lost during an Eastern international flight from New York to Lima, Peru. Eastern filed a motion for summary judgment alleging that its liability was limited by the Warsaw Convention to $9.07 per pound. Republic opposed summary judgment on grounds that Eastern's failure to comply with the baggage claim check requirements of Article 4 of the Warsaw Convention and Eastern's alleged willful misconduct in handling Republic's baggage vitiated Eastern's claim to limited liability under the Convention. Republic also filed a cross-motion for summary judgment claiming automatic recovery if the district court found the Convention's liability limitations inapplicable. Judge Conner granted Eastern's motion for summary judgment holding that under Exim Industries v. Pan American World Airways, 754 F.2d 106 (2d Cir.1985), Eastern's liability was limited by the Convention. Judge Conner also noted the absence of material issues of fact with respect to Republic's claims of willful misconduct. We affirm.
 
 BACKGROUND
 
 3
 As part of its service to South American customers, Republic operated an in-house courier service for the transportation of currency as checked baggage aboard international passenger flights. In May 1982, representatives of Republic met with Eastern officials to discuss Eastern's flight schedule for its newly acquired South American routes. At this meeting, Republic informed Eastern that couriers would be accompanying large amounts of currency shipped as checked baggage to destinations in South America. Eastern responded that it would not accept liability for high value cargo shipped as checked baggage. However, Eastern agreed to provide Republic with a customer assistance letter to facilitate Republic's use of Eastern's services.[1] Eastern never expressly refused to permit Republic to ship currency as checked baggage aboard its aircraft.
 
 
 4
 On December 13, 1982, Republic instructed Renzo Baronti, an international courier, to accompany two bags of currency aboard Eastern Flight 001. One bag, bound for Lima, Peru, contained $2 million. The second bag contained $4.5 million and was to be delivered in Santiago, Chile. Flight 001 was to stop in Miami, Florida en route to its first South American stop in Lima.
 
 
 5
 Baronti obtained a ticket from an Eastern ticket agent at John F. Kennedy Airport, which bore a notice of the Warsaw Convention's applicability.[2] Baronti then proceeded to the Eastern baggage check area and informed an Eastern attendant that he was accompanying a "high value shipment" and required two baggage claim checks. Baronti did not otherwise make a special declaration as to the value of his shipment nor did he reveal its contents.[3] The Eastern attendant made no effort to verify the presence of Baronti's bags which, at the time, were being driven to the aircraft in a Wells Fargo armored truck.
 
 
 6
 Baronti received two claim checks from the attendant. The claim check for the Santiago bag was a standard claim check containing the destination, baggage identification number, preprinted routing codes and notice of the Warsaw Convention's applicability. Because the attendant could not find a standard Lima claim check for the Lima bag, a limited release form was substituted which did not contain the routing codes or Warsaw Convention notice.[4] The attendant wrote Baronti's name on the limited release and handed him both claim checks. Baronti then added "FLT # 1 LIMA" to the limited release and proceeded to the passenger boarding area.
 
 
 7
 Prior to boarding, Baronti informed Eastern's gate agents that he was a courier accompanying a high value shipment and requested access to the tarmac to meet the armored car. Eastern complied with this request. At planeside, the Wells Fargo armored truck arrived under escort by Eastern. Baronti entered the truck, checked the seals and locks on the bags and affixed the Santiago claim check to the bag containing $4.5 million. He affixed the limited release form to the Lima bag containing $2 million. Although the portion of the limited release form retained by Baronti contains a printed number, it is not clear whether the portion Baronti affixed to the Lima bag contained a matching number. We assume, however, as did Judge Conner for purposes of summary judgment, that no such identification number appeared on the stub attached to Republic's currency bag. Both bags were then loaded aboard the plane. Although Baronti instructed Eastern employees to load Republic's bags last, several carts of late cargo were loaded after Republic's shipment was secured. Neither Baronti nor the Wells Fargo guards registered any objection to this procedure with Eastern employees.
 
 
 8
 Upon the flight's arrival in Miami, Eastern allowed Baronti to leave the aircraft first. Baronti met armed guards at planeside and observed Eastern personnel unloading cargo and baggage. Baronti then requested an Eastern employee to lift the bags chest high so that their presence could be verified. Both bags were visually inspected to Baronti's satisfaction and were replaced in the cargo bin. Eastern flight 001 then proceeded to Lima, Peru where, for the first time, Baronti discovered that the bag containing $2 million was missing. Six weeks later, in Atlantic City, New Jersey, five suspects were arrested with approximately $150,000 of the missing currency in their possession.
 
 
 9
 Republic commenced this lawsuit against Eastern claiming recovery for the full amount of its loss. Eastern moved for summary judgment asserting limited liability under the Warsaw Convention. Republic opposed the motion claiming that Eastern's conduct deprived it of the protection of limited liability and interposed its own motion for summary judgment. The district court ruled in favor of Eastern and approved settlement of $634.90 ($9.07 per pound times the maximum allowable weight of 70 pounds under Eastern's Tariff) under Article 22(2) of the Convention. This appeal followed.
 
 DISCUSSION
 
 10
 The Warsaw Convention[5] is a comprehensive international treaty governing the liability of air carriers engaged in the international transportation of passengers whose purpose is to create uniform rules limiting airline liability for damages resulting from personal injury or property damage. As a quid pro quo for limiting recovery, the treaty creates a presumption of airline liability in favor of passengers. Thus, a passenger may hold an airline strictly liable for damages suffered while engaged in international transportation, but recovery of damages is limited by various provisions of the Convention.
 
 
 11
 With respect to checked baggage, Article 18 provides for the strict liability of carriers for loss or damage sustained while under the control of the carrier. Article 22(2) limits the carrier's liability to $20 per kilogram or $9.07 per pound. The limitation of damages only applies, however, if the carrier has delivered a baggage claim check in conformity with the requirements of Article 4.
 
 
 12
 Republic asserts two grounds for reversal of the district court on this appeal. First, Republic argues, the failure of Eastern to provide Republic with a claim check as prescribed by Article 4 of the Convention precludes Eastern from claiming the protection of limited liability. Judge Conner ruled that the absence of a proper claim check did not prejudice Republic and, therefore, under Exim Industries v. Pan American World Airways, the amount of recoverable damages was limited by Article 22(2). Republic urges that we eschew a liberal interpretation of Article 4 and require strict adherence to its provisions. Second, Republic claims that Eastern was guilty of willful misconduct in the handling of its baggage and on this basis should not be permitted to avail itself of limited liability. See Warsaw Convention Article 25(1).
 
 A. Article 4
 
 13
 Article 4 of the Warsaw Convention requires a carrier to provide a passenger with a baggage claim check containing certain information. The requirements are as follows:
 
 
 14
 (1) For the transportation of baggage, other than small personal objects of which the passenger takes charge himself, the carrier must deliver a baggage check.
 
 
 15
 (2) The baggage check shall be made out in duplicate, one part for the passenger and the other part for the carrier.
 
 
 16
 (3) The baggage check shall contain the following particulars:
 
 
 17
 (a ) The place and date of issue;
 
 
 18
 (b ) The place of departure and of destination;
 
 
 19
 (c ) The name and address of the carrier or carriers;
 
 
 20
 (d ) The number of the passenger ticket;
 
 
 21
 (e ) A statement that delivery of the baggage will be made to the bearer of the baggage check;
 
 
 22
 (f ) The number and weight of the packages;
 
 
 23
 (g ) The amount of the value declared in accordance with article 22(2);
 
 
 24
 (h ) A statement that the transportation is subject to the rules relating to liability established by this convention.
 
 
 25
 (4) The absence, irregularity, or loss of the baggage check shall not affect the existence or the validity of the contract of transportation which shall none the less be subject to the rules of this convention. Nevertheless, if the carrier accepts baggage without a baggage check having been delivered, or if the baggage check does not contain the particulars set out at (d ), (f ), and (h ) above, the carrier shall not be entitled to avail himself of those provisions of the convention which exclude or limit his liability.
 
 
 26
 Warsaw Convention, Article 4, reprinted in 49 U.S.C. following Sec. 1502 (1982). Under the express terms of Article 4, the absence of either the passenger ticket number, the number and weight of the packages or the required notice precludes limited liability under Article 22(2). There is no dispute that all three items were missing from the limited release form handed to Republic's courier in this case.
 
 
 27
 Recently, in the Exim case, we held that a carrier's failure to comply with Article 8 did not prevent the carrier from claiming limited liability where the omissions were insubstantial and did not prejudice the shipper. 754 F.2d at 108. Article 8 of the Convention, applicable to air waybills, requires, inter alia, the following particulars to appear thereon: the number of packages, the method of packing, the numbers on the packages, the weight or dimensions of the goods and a statement that the Convention applies to the journey. Missing from the air waybills in Exim were the method of packing, the numbers on the packages and a properly worded notice of the Convention's applicability. Because we found that these omissions were technical and non-prejudicial under the facts of that case, however, and because the shipper had received adequate notice of the Convention's applicability, we held that limited liability was available to the carrier.
 
 
 28
 On the facts of this case, we see no reason for refusing out of hand to apply Exim to Article 4 baggage checks. The requirements of Article 4 essentially parallel those of Article 8. Both articles require that basic information of notice, identification and weight appear on cargo documents. Articles 4 and 8 both apply to lost or damaged property and do not affect the carrier's liability for personal injury. See Gill v. Lufthansa German Airlines, 620 F.Supp. 1453, 1455 (E.D.N.Y.1985). Moreover, both articles contain requirements which, if not satisfied, may result in prejudice to the airline customer. For these reasons, therefore, we hold that where, as here, the traveler is more like a commercial shipper than the typical airline passenger, our analysis in Exim applies to claims brought under Article 4 of the Warsaw Convention.
 
 
 29
 Turning to the facts before us, we note that none of the required information appeared on the limited release form used to identify Republic's baggage. We agree, however, with Judge Conner that the absence of the printed notice and weight of the bag did not prejudice Republic. First, with respect to notice of the Convention's applicability, the district court found that Baronti was an experienced courier, having made over 250 flights in his career with Republic. Republic cannot reasonably contend that Baronti was unaware of the Warsaw Convention's application to his two hundred fifty-first such flight. In fact, a proper notice was printed both on Baronti's passenger ticket and on his baggage claim check for the Santiago bag. As an experienced courier, it would be incredible for Baronti to be unaware of the applicability of the Warsaw Convention and its attendant provisions of limited liability. The district court, therefore, committed no error in finding this element of Article 4 satisfied.
 
 
 30
 Second, under the facts of this particular case, the failure of Eastern to record the weight of Republic's baggage on the limited release was not prejudicial. As the district court noted, the purpose of the weight requirement is to enable passengers to calculate the amount recoverable from the carrier under the Warsaw Convention for lost or damaged baggage. J.App. at 19-20. A passenger need only multiply the amount recoverable per pound under the Convention ($9.07) by the weight of his baggage to arrive at this figure. Once having made the calculation, a passenger has enough information to decide whether to purchase insurance.
 
 
 31
 In the case at bar, Republic must have known that it could not obtain recovery for $2 million under the Convention, even if Baronti could not make the calculation because he did not know the precise weight of his bag. In order to recover $2 million at $9.07 per pound, Republic's currency bag would need to weigh 220,507 pounds. Obviously, Republic was on notice that insurance coverage would be necessary to adequately protect its shipment. Moreover, Republic stated in its export declaration that its bag weighed fifty-two pounds. J.App. at 148. Therefore, the absence of weight information, under the facts of this case, did not prejudice Republic.
 
 
 32
 The absence of a baggage identification number on the limited release is more troubling. Obviously, the purpose of the baggage identification number is to assure the proper recovery of a passenger's baggage at the point of destination. Several factors peculiar to this case, however, indicate that Republic was not prejudiced by the absence of an identification number. First, the Republic courier did not present his baggage to Eastern's attendant at the baggage check counter. Instead, Republic's currency bags were located in an armored truck parked on the airport tarmac. Eastern, therefore, had no opportunity to assure that Republic's baggage was properly identified. Second, Republic's courier personally supervised the handling of the currency bags at each point in the journey. This supervision virtually eliminated the possibility that Eastern mishandled Republic's bag as a result of the missing identification number. Eastern personnel, in fact, easily located Republic's currency bag in Miami. After carefully viewing the bag, Baronti identified it as belonging to Republic. For these reasons, Republic cannot claim that the absence of an identification number was prejudicial.
 
 
 33
 Under Exim, it is apparent here that "the particulars missing from [the baggage check] ... were technical and insubstantial omissions that did not prejudice the shipper and were of little commercial significance." Exim, 754 F.2d at 108. Consequently, their omission will not preclude Eastern's assertion of liability limitations.
 
 B. Willful Misconduct
 
 34
 As an alternative theory, Republic argues that Eastern should not be allowed to claim limited liability because, it alleges, Eastern was guilty of willful misconduct in handling its baggage in New York. Republic relies on Article 25(1) of the Warsaw Convention which provides:
 
 
 35
 The carrier shall not be entitled to avail himself of the provisions of this convention which exclude or limit his liability, if the damage is caused by his wilful misconduct or by such default on his part as, in accordance with the law of the court to which the case is submitted, is considered to be equivalent to wilful misconduct.
 
 
 36
 Judge Conner granted Eastern's motion for summary judgment finding that Republic had failed to raise a genuine issue of material fact regarding willful misconduct. We agree.
 
 
 37
 To defeat a summary judgment motion, where the non-moving party would have the burden of proof on a particular factual issue at trial, it must demonstrate the existence of a genuine issue of material fact. See Celotex Corp. v. Catrett, --- U.S. ----, ---- - ----, 106 S.Ct. 2548, 2552-53, 91 L.Ed.2d 265 (1986). It is important to note that factual disputes must be both "genuine" and "material." The Supreme Court recently stated that "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact.... Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., --- U.S. ----, ----, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Therefore, we scrutinize Republic's allegations to determine if they warrant a trial on the merits.
 
 
 38
 Willful misconduct requires either "the intentional performance of an act with knowledge that the performance of that act will probably result in injury" or "the intentional performance of an act in such a manner as to imply reckless disregard of the probable consequences." Pekelis v. Transcontinental & Western Air, 187 F.2d 122, 124 (2d Cir.), cert. denied, 341 U.S. 951, 71 S.Ct. 1020, 95 L.Ed. 1374 (1951). If Republic is to benefit from Article 25(1), therefore, it must satisfy its burden by proving that Eastern acted in reckless disregard of the probable consequences of its acts in loading Republic's baggage in New York. See Grey v. American Airlines, 227 F.2d 282, 285 (2d Cir.1955), cert. denied, 350 U.S. 989, 76 S.Ct. 476, 100 L.Ed. 855 (1956).
 
 
 39
 Republic claims that Eastern committed willful misconduct in three ways. First, Republic alleges that Eastern violated its own tariff by accepting currency as checked baggage. Second, Republic asserts that Eastern failed to adopt formal security procedures for the loading of high value baggage. Third, according to Republic, Eastern violated its own de facto procedures when handling Republic's baggage. For reasons that follow, we hold that no genuine issue of material fact exists as to any of Republic's claims.
 
 1. Violation of Tariff
 
 40
 Rule 16A(2) of Eastern's tariff provides that "[f]ragile or perishable articles, money, jewelry, silverware, negotiable papers, securities or other valuables will not be accepted as checked baggage." J.App. at 102 (emphasis added). Republic contends that Eastern is guilty of willful misconduct because it failed "to take appropriate measures for the bag's protection" after having accepted Republic's currency in violation of its tariff. Br. of Appellant at 22. We do not agree.
 
 
 41
 Even if Eastern knowingly accepted currency as checked baggage, we are not prepared to hold that an airline's mere violation of its tariff, without more, is sufficient to permit a finding of willful misconduct. As previously noted, willful misconduct requires performance of an act in reckless disregard of the probable consequences. The simple acceptance of currency as checked baggage, however, does not alone create a probability of its loss. Rather, other factors must be established indicating that such a loss is likely to occur and that defendant was aware of the probability when it accepted plaintiff's valuables. Republic has failed to produce any evidence that the mere acceptance of its currency bags as checked baggage was likely to result in loss and that Eastern was aware of this likelihood. Summary judgment was, therefore, proper as to this claim.
 
 2. Failure to Adopt Formal Procedures
 
 42
 Republic argues that Eastern committed willful misconduct by failing to adopt formal procedures for handling "high value baggage." However, the proof in the district court indicated that Eastern had formal security procedures only for items designated "high value cargo." J.App. at 25-26. As Judge Conner noted, Eastern provided this service to its customers for an extra charge. Clearly, Republic chose not to pay the extra fee and cannot now complain that the choice was unwise. Judge Conner put matters in proper perspective when he said "if anyone was guilty of wilful misconduct, it was Republic, and not Eastern." J.App. at 26.
 
 3. Failure to Follow De Facto Procedures
 
 43
 Republic finally argues that Eastern was guilty of willful misconduct for failure to follow certain customary procedures Eastern adopted in loading Republic's baggage from armored cars. According to Republic, Eastern would customarily load Republic's bags last to ensure that they would be the first items unloaded. On the occasion of the loss, however, Eastern loaded additional baggage after loading Republic's currency bags. Thus, Republic claims, the "burial [of Republic's bag] in the interior of the hold facilitated its disappearance." Br. of Appellant at 26.
 
 
 44
 Although Republic alleges that Eastern developed the "last on/first off" procedure, the testimony of Republic's own courier indicates that it was Republic who suggested the practice. J.App. at 166, 199-200, 204. According to Baronti, his superior at Republic, Joseph Barna, specifically instructed him to load the currency bags last. Baronti, in turn, instructed both the Wells Fargo armed guards and Eastern personnel to load Republic's bags last so that they would be near the door. J.App. at 212-14. In light of this explicit testimony from Republic's courier, it appears that no genuine issue of fact exists as to Eastern's adoption of de facto security measures.
 
 
 45
 Republic also asserts for the first time on appeal that, regardless of Eastern's procedures, Eastern's failure to place Republic's bag near the cargo door was willful misconduct that proximately caused Republic's loss. We cannot agree. First, "[w]e will not reverse a summary judgment on the basis of arguments not presented below unless our failure to do so will result in a possible miscarriage of justice." Radix Organization, Inc. v. Mack Trucks, Inc., 602 F.2d 45, 48 (2d Cir.1979). Second, Republic's own knowledge of where the bag had been placed and its failure to insist that the bag be placed near the cargo door strongly suggest that the bag's placement was not made in reckless disregard of the probable consequence of theft. When Flight 001 arrived in Miami, Eastern personnel displayed both Republic bags for visual inspection by Baronti. At that time, Baronti was satisfied that the currency bags were safely aboard the aircraft. Baronti further monitored the removal of luggage and other articles from the plane. At no time did Baronti object to the location of the currency bags in the cargo bin nor did he request that the bags be moved closer to the door. Eastern employees at Miami, moreover, had no difficulty in locating Republic's baggage. Because Republic has failed to produce any evidence from which a reasonable jury could find that willful misconduct of Eastern personnel caused Republic's loss, we affirm the grant of summary judgment in favor of Eastern.
 
 CONCLUSION
 
 46
 Republic has failed to show that it was prejudiced by Eastern's technical non-compliance with Article 4 of the Warsaw Convention. Absent such a showing, summary judgment in favor of Eastern was appropriate. Also, Republic has not demonstrated the existence of a genuine issue of material fact regarding the alleged willful misconduct of Eastern in loading additional baggage in New York. Because no genuine issue of fact exists as to this point, and because Eastern's actions were not shown to be the proximate cause of Republic's loss, we affirm Judge Conner's grant of summary judgment to Eastern.
 
 
 
 [1]
 Eastern's customer assistance letter provided the following:
 To Whom It May Concern:
 This letter will introduce the bearer as a representative of Republic National Bank of New York, who is travelling on official business for the bank on Eastern Airlines.
 The Republic National Bank and its representatives are valued customers of Eastern Airlines. We would appreciate any assistance you could offer to ensure a safe and pleasant experience.
 We thank you for your cooperation.
 J.App. at 116.
 
 
 [2]
 Baronti's ticket indicated that the place of departure was New York, New York and the place of destination was Buenos Aires, Argentina. Because both the United States and Argentina are signatories to the Convention, the Convention applied to the entire flight even though Peru is not a party to the Convention. See Warsaw Convention, Article 1, section 2, reprinted in 49 U.S.C. following Sec. 1502
 
 
 [3]
 Under Article 22(2) of the Convention, a shipper may make a special declaration of value at the time the baggage is delivered to the carrier. If such a declaration is made, the shipper must pay a "supplementary sum if the case so requires." The carrier is then liable "to pay a sum not exceeding the declared sum" if the baggage is lost or damaged
 
 
 [4]
 A limited release form is used by Eastern to release it from liability for pre-existing damage to baggage checked by passengers
 
 
 [5]
 Convention for the Unification of Certain Rules Relating to International Transportation by Air, concluded at Warsaw, Poland, October 12, 1929, adhered to by the United States, June 27, 1934, 49 Stat. 3000, 3014, reprinted in 49 U.S.C. following Sec. 1502