**Ifeanyi CHUKWUMA, Plaintiff,**

v.

**GROUPE AIR FRANCE, INC., Defendant.**

**No. 90 Civ. 6757 (PKL).**

United States District Court, S.D. New York.

June 17, 1991.

Ifeanyi Chukwuma, pro se.

Washington, Perito & Dubuc, New York City (Stacey Athans Demas, of counsel), for defendant.

## OPINION AND ORDER

LEISURE, District Judge:

This is an action asserting a claim for $20,000 arising from the loss of plaintiff's baggage during the course of his journey from New York City to Lagos, Nigeria. Defendant has now moved for summary judgment, seeking an order limiting its liability to $20 per kilogram of lost baggage pursuant to the *Convention for the Unification of Certain Rules Relating to International Transportation by Air*, Oct. 12, 1929, 49 Stat. 3000, T.S. No. 876 (1934) (the "Warsaw Convention" or the "Convention"). Plaintiff *pro se* has cross-moved for summary judgment, seeking the full $20,000 sought in his complaint.

### Background

On May 1, 1989, Compagnie Nationale Air France ("Air France")[1] issued an Air France passenger ticket for air transportation from New York to Lagos, Nigeria and back. Plaintiff departed John F. Kennedy International Airport in New York on December 21, 1989, aboard Air France flight number 026. At the time of check-in, plaintiff was given a "Passenger Coupon and Baggage Check" indicating that he had checked in two bags weighing a total of 38 kilograms. This document (the "Contract") also contained a "Notice of Baggage Liability Limitations," that read in pertinent part as follows:

> Liability for loss, delay or damage to baggage is limited unless a higher value is declared in advance and additional charges are paid. For most international travel (including domestic portions of international journeys) the liability limit is

approximately US $9.07 per pound (US $20 per kilo) for checked baggage.... Excess valuation may be declared for some types of articles. Some carriers assume no liability for fragile, valuable or perishable articles. Further information may be obtained from the carrier.

Affidavit of Stacey Athans Demas, Esq., sworn to on March 20, 1991, ("Demas Aff."), Exhibit G. Plaintiff claims, and defendant disputes, that plaintiff also checked in a third item—a "hand trolley"— at the insistence of Air France flight attendants at the time plaintiff actually boarded the aircraft. Plaintiff claims he was not given a proper baggage check for the hand trolley.

Plaintiff arrived at Charles DeGaulle Airport in Paris on December 22, 1989, and connected with UTA flight number 861, arriving at Murtala Muhammed International Airport in Lagos later that day. Upon his arrival in Lagos, plaintiff discovered that some of his baggage, which had been checked through to Lagos, had not arrived. Specifically, plaintiff reported on a "Property Irregularity Report" that one of his suitcases and the hand trolley were missing, and that one suitcase, weighing 8 kilograms, had been properly delivered. Demas Aff., Exhibit D. Plaintiff's missing suitcase was subsequently located by UTA in Paris and transported to Lagos, where it arrived on or about December 29, 1989. Plaintiff returned to the airport in Lagos on December 29 and recovered this suitcase, which he found to have been damaged and pilfered. Plaintiff thereupon completed a "Damaged Baggage Report" indicating that the total weight of the damaged suitcase on arrival at Lagos was 13 kilograms. Demas Aff., Exhibit F. Thus, 17 kilograms of contents were missing from the suitcase.[2] The hand trolley was never delivered to plaintiff. Plaintiff's damaged suitcase was returned to Paris for replace-

---

1. Air France and Union de Transports Aeriens ("UTA") are collectively referred to for commercial purposes as "Groupe Air France, Inc.," the named defendant in this action.

2. This figure is calculated by starting with the total weight of the two suitcases checked in at Kennedy Airport (38 kilograms), subtracting the weight of the suitcase timely delivered to plaintiff (8 kilograms), and subtracting the weight of the damaged suitcase at the time of its delivery in Lagos (13 kilograms).

ment by the UTA Station Manager in Lagos, but plaintiff has not received a new suitcase.

Plaintiff commenced this action on September 27, 1990, in the Civil Court of the City of New York, Bronx County, seeking to recover $20,000 for "Personal damage; failure to provide proper services; loss of luggage; loss of time from work; ruined vacation." Demas Aff., Exhibit A. The action was thereafter removed to this Court, and the parties have now cross-moved for summary judgment.

*Discussion*

Federal Rule of Civil Procedure 56(c) provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2509, 91 L.Ed.2d 202 (1986). "Summary judgment is appropriate if, 'after drawing all reasonable inferences in favor of the party against whom summary judgment is sought, no reasonable trier of fact could find in favor of the non-moving party.'" *United States v. All Right, Title & Interest in Real Property, etc.*, 901 F.2d 288, 290 (2d Cir.1990) (quoting *Murray v. National Broadcasting Co.*, 844 F.2d 988, 992 (2d Cir.), *cert. denied*, 488 U.S. 955, 109 S.Ct. 391, 102 L.Ed.2d 380 (1988)).

The substantive law governing the case will identify those facts which are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2509, 91 L.Ed.2d 202 (1986). "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there does indeed exist a genuine issue for

trial." *Anderson, supra*, 477 U.S. at 249, 106 S.Ct. at 2511; *see also R.C. Bigelow, Inc. v. Unilever N.V.*, 867 F.2d 102, 107 (2d Cir.), *cert. denied*, —— U.S. ——, 110 S.Ct. 64, 107 L.Ed.2d 31 (1989). The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion," and identifying which materials "it believes demonstrate the absence of a genuine issue of material fact." *Celotex, supra*, 477 U.S. at 323, 106 S.Ct. at 2553; *see also Trebor Sportswear Co. v. Limited Stores, Inc.*, 865 F.2d 506, 511 (2d Cir.1989).

Once a motion for summary judgment is properly made, however, the burden then shifts to the non-moving party, which " 'must set forth specific facts showing that there is a genuine issue for trial.' " *Anderson, supra*, 477 U.S. at 250, 106 S.Ct. at 2511 (quoting Fed.R.Civ.P. 56(e)). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson, supra*, 477 U.S. at 247–48, 106 S.Ct. at 2509 (emphasis in original). "Conclusory allegations will not suffice to create a genuine issue. There must be more than a 'scintilla of evidence,' and more than 'some metaphysical doubt as to the material facts.' " *Delaware & Hudson Railway Co. v. Consolidated Rail Corp.*, 902 F.2d 174, 178 (2d Cir.1990) (quoting *Anderson, supra*, 477 U.S. at 252, 106 S.Ct. at 2512 and *Matsushita Electric Industrial Co., Ltd v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986)); *see also Carey v. Crescenzi and Harenzy Realty Corp.*, 923 F.2d 18, 21 (2d Cir.1991). "The non-movant cannot 'escape summary judgment merely by vaguely asserting the existence of some unspecified disputed material facts,' or defeat the motion through 'mere speculation or conjecture.' " *Western World Insurance Co. v. Stack Oil, Inc.*, 922 F.2d 118, 121 (2d Cir.1990) (quoting *Borthwick v. First Georgetown Securities, Inc.*, 892 F.2d 178, 181 (2d Cir.1989) and *Knight v. U.S. Fire Insurance Co.*, 804 F.2d 9, 12 (2d Cir.1986), *cert. denied*,

480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987)).

Because the Contract and the Warsaw Convention provide for the same $20 per kilogram liability limitation,[3] and, moreover, because the provisions of the Contract cannot contravene the Convention,[4] the central issue to be decided is whether the liability limitation contained in Article 22 of the Convention is applicable to the case at bar. As a threshold matter, the parties agree that plaintiff's trip to Nigeria constituted "international transportation" as that term is defined by Article 1 of the Convention,[5] and that the damage to plaintiff's baggage occurred "during the transportation by air" within the meaning of Article 18.[6] Plaintiff contends, however, that defendant is unable to invoke Article 22's limitation of liability because defendant allegedly failed to comply with Article 4 of the Convention,[7] and because defendant's behavior constituted "willful miscon-

3. In addition to explicitly stating a liability limitation of $20 per kilogram, the Contract makes reference to Air France's and UTA's tariffs, Rule 55(C)(5) of which similarly limits liability for checked baggage to $20 per kilogram, unless a higher value is declared and additional charges are paid. See Demas Aff., Exhibit H.

Article 22(2) of the Warsaw Convention provides in pertinent part:

In the transportation of checked baggage and of goods, the liability of the carrier shall be limited to a sum of 250 francs per kilogram, unless the consignor has made, at the time when the package was handed over to the carrier, a special declaration of the value at delivery, and has paid a supplementary sum if the case so requires.

Article 22(4) of the Warsaw Convention provides that "[t]he sum[ ] mentioned above ... may be converted into any national currency in round figures." In the United States, the Warsaw Convention's limitation for liability with respect to checked baggage has been converted to $9.07 per pound, or $20 per kilogram. See *Trans World Airlines, Inc. v. Franklin Mint Corp.*, 466 U.S. 243, 254, 104 S.Ct. 1776, 1783–84, 80 L.Ed.2d 273 (1984).

4. "Nothing contained in this convention shall prevent the carrier either from refusing to enter into any contract of transportation or from making regulations *which do not conflict* with the provisions of this convention." Warsaw Convention, Article 33 (emphasis added).

5. Article 1 of the Warsaw Convention provides in pertinent part: "This convention shall apply to all international transportation of persons, baggage, or goods performed by aircraft for hire."

6. Article 18 of the Warsaw Convention provides in pertinent part:

(1) The carrier shall be liable for damage sustained in the event of the destruction or loss of, or damage to, any checked baggage or any goods if the occurrence which caused the damage so sustained took place during the transportation by air.

(2) The transportation by air within the meaning of the preceding paragraph shall comprise the period during which the baggage or goods are in charge of the carrier, whether in an airport or on board an aircraft.... (3) The period of transportation by air shall not extend to any transportation by land, by sea, or by river performed outside an airport.

See also *Victoria Sales Corp. v. Emery Air Freight, Inc.*, 917 F.2d 705, 707 (2d Cir.1990) ("transportation by air" includes loss occurring in the air or on the ground within the boundaries of the airport).

7. Article 4 of the Convention provides as follows:

(1) For the transportation of baggage, other than small personal objects of which the passenger takes charge himself, the carrier must deliver a baggage check.

(2) The baggage check shall be made out in duplicate, one part for the passenger and the other part for the carrier.

(3) The baggage check shall contain the following particulars:

(a) The place and date of issue;

(b) The place of departure and of destination;

(c) The name and address of the carrier or carriers;

(d) The number of the passenger ticket;

(e) A statement that delivery of the baggage will be made to the bearer of the baggage check;

(f) The number and weight of the packages;

(g) The amount of the value declared in accordance with article 22(2);

(h) A statement that the transportation is subject to the rules relating to liability established by this convention.

(4) The absence, irregularity, or loss of the baggage check shall not affect the existence or the validity of the contract of transportation which shall nonetheless be subject to the rules of this convention. Nevertheless, if the carrier accepts baggage without a baggage check having been delivered, or if the baggage check does not contain the particulars set out at (d), (f), and (h) above, the carrier shall not be entitled to avail himself of those provisions of the convention which exclude or limit his liability.

duct" within the meaning of Article 25.[8] In addition, plaintiff argues that, pursuant to Article 19 of the Convention, defendant's liability for damage caused by delay in the transportation of plaintiff's baggage is not limited by Article 22.[9] Defendant, in contrast, argues that Article 22 is fully applicable in the instant action.

■ Plaintiff's Article 19 argument may be dealt with first and need not delay the Court long. Article 24(1) of the Convention explicitly provides that "[i]n the cases covered by article[ ] 19 any action for damages, however founded, can only be brought subject to the conditions and limits set out in this convention." Accordingly, to the extent Article 22 limits defendant's liability, that limitation applies equally to damage caused by delay. *See Deere & Company v. Deutsche Lufthansa Aktiengesellschaft*, No. 81 C. 4726, slip op., 1985 WL 4897 (N.D.Ill.Dec. 16, 1985); *Saiyed v. Transmediterranean Airways*, 509 F.Supp. 1167, 1168–69 (W.D.Mich.1981).

Plaintiff claims that defendant failed to comply with Article 4 in several respects, and thus defendant may not avail itself of the Convention's limitation on liability. *See, e.g., Gill v. Lufthansa German Airlines*, 620 F.Supp. 1453, 1454–55 (E.D.N.Y. 1985) (failure to comply with Article 4 precludes Convention-based limitation on liability). Plaintiff first asserts that the baggage check issued to him by defendant for his two suitcases did not contain the number of plaintiff's passenger ticket or the weight of the suitcases. This assertion is refuted, however, by a photocopy of plain-

tiff's ticket, indicating both the number of the ticket, as well as the number and weight of plaintiff's checked suitcases. *See* Demas Aff., Exhibit B. Therefore, as to these suitcases, defendant complied with Article 4.[10]

■ Plaintiff's Article 4 argument with respect to the missing hand trolley, however, has merit. Plaintiff states in his sworn affidavits that he attempted to take the hand trolley onto the flight from New York to Paris, but that defendant's flight attendants insisted that it be checked in, and that he was never given a baggage check for it that complied with Article 4. *See* Affidavit of Ifeanyi Chukwuma, undated ("Chukwuma Aff."), at 8–9; Reply Affidavit of Ifeanyi Chukwuma, sworn to on May 2, 1991 ("Chukwuma Reply Aff."), at 7–8.[11] Defendant contends that the evidence suggests that the hand trolley was actually stored inside one of the two checked suitcases. However, the documentary evidence referred to by defendant actually indicates that the hand trolley was, in fact, transported separately from the two suitcases, *see, e.g.,* Demas Aff., Exhibit D (Property Irregularity Report listing trolley separate from suitcase), and defendant has presented no evidence in affidavit form to contradict plaintiff's affidavits nor any evidence of a baggage check for the hand trolley. Accordingly, the Court finds that plaintiff's hand trolley was checked separately from plaintiff's checked suitcases, and that a proper baggage check was not provided for it. Thus, Article 22's limi-

---

**8.** Article 25 of the Convention reads in pertinent part:
  The carrier shall not be entitled to avail himself of the provisions of this convention which exclude or limit his liability, if the damage is caused by his willful misconduct or by such default on his part as, in accordance with the law of the court to which the case is submitted, is considered to be equivalent to willful misconduct.

**9.** Article 19 of the Convention reads as follows: "The carrier shall be liable for damage occasioned by delay in the transportation of passengers, baggage, or goods."

**10.** The Court notes that plaintiff's baggage check also clearly stated that his transportation would be subject to the Convention's rules relating to

the limitation of liability. The presence of such a statement is the third *sine qua non* of limited liability under Article 4(4).

**11.** Bearing in mind the Second Circuit's instruction that district courts be especially careful to give *pro se* litigants full opportunity to present evidence in conjunction with motions for summary judgment, *see, e.g., Sellers v. M.C. Floor Crafters, Inc.,* 842 F.2d 639, 642 (2d Cir.1988), the Court has accepted and considered all of plaintiff's submissions in this action. The Court notes that those submissions indicate an erudite author with an excellent understanding of the law.

tation of liability provision is inapplicable with respect to the hand trolley.

Plaintiff valued the hand trolley at $34. *See* Plaintiff's Answers to First Set of Interrogatories ("Plaintiff's Answers") at 8, attached to Demas Aff. as Exhibit J.[12] Theoretically, plaintiff may have incurred some consequential damage compensable under Article 19 due to delay—or, in this case, non-delivery—of the hand trolley.[13] However, given that plaintiff claims to have lost a total of $10,662.20 in property, the amount of consequential damage attributable to the loss of the $34 hand trolley is too insignificant to rise to the level of a genuine issue as to a material fact. *See* Fed.R.Civ.P. 56(c). Moreover, plaintiff has not even suggested that the costs he allegedly incurred in attempting to recover his lost baggage would have been any less had the trolley been delivered properly. Thus, plaintiff's damages with respect to the lost hand trolley are limited to $34.

█ Finally, plaintiff argues that defendant's alleged mishandling of his baggage constituted "willful misconduct" within the meaning of Article 25, and thus Article 22's limitation of liability is inapplicable. In the context of Article 25, "[w]illful misconduct requires either 'the intentional performance of an act with knowledge that the performance of that act will probably result in injury' or 'the intentional performance of an act in such a manner as to imply reckless disregard of the probable consequences.'" *Republic National Bank of New York v. Eastern Airlines, Inc.*, 815 F.2d 232, 238–39 (2d Cir.1987) (quoting *Pek-*

*elis v. Transcontinental & Western Air*, 187 F.2d 122, 124 (2d Cir.), *cert. denied*, 341 U.S. 951, 71 S.Ct. 1020, 95 L.Ed. 1374 (1951)); *see also Perera Company, Inc. v. Varig Brazilian Airlines, Inc.*, 775 F.2d 21, 23 (2d Cir.1985).

Plaintiff bears the burden of setting forth facts demonstrating that there is a genuine issue of material fact as to defendant's conduct. *See Republic National Bank, supra*, 815 F.2d at 238. Despite his submission to the Court of numerous affidavits and exhibits in connection with this action, plaintiff has done no more than rely on "conclusory allegations," *Delaware & Hudson Railway, supra*, 902 F.2d at 178, and "mere speculation [and] conjecture," *Western World Insurance, supra*, 922 F.2d at 121, in asserting that defendant is guilty of willful misconduct. Plaintiff in effect asks this Court to presume willful misconduct on the part of defendant solely on the basis of the fact that some of his luggage was lost or stolen, a presumption that would severely undercut Article 22's limitation of liability. The Court declines this invitation to rewrite the Convention. *See Trans World Airlines, supra*, 466 U.S. at 256, 104 S.Ct. at 1784 ("The Convention's first and most obvious purpose was to set some limit on a carrier's liability for lost cargo."). Accordingly, the Court finds that plaintiff has failed to demonstrate the existence of a genuine issue of material fact regarding defendant's alleged willful misconduct, and thus Article 22's limitation of liability is applicable to plaintiff's two checked suitcases.[14]

12. Plaintiff occasionally alludes in his papers to the hand trolley's "pocket," *see* Chukwuma Reply Aff., at 8, or "pockets," Chukwuma Aff., at 4, suggesting that such pocket or pockets held certain unspecified "contents." Plaintiff has provided no evidence of any such contents, and never states what they were or what they were worth. Moreover, the Property Irregularity Report that plaintiff filled out clearly indicates the "contents" of the trolley as merely the trolley itself. *See* Demas Aff., Exhibit D. Therefore, the Court finds that the lost hand trolley was worth a total of $34—the value plaintiff indicated as the value of the trolley alone.

13. Plaintiff claims consequential damages totalling $9,337.80. *See* Plaintiff's Answers at 8.

These damages allegedly include $2700 in various out-of-pocket expenses, food and lodging, and long-distance telephone calls, $1500 in "time lost from work," and $5137.80 for "ruined vacation" and "loss-of-face." The Court notes the remarkable coincidence that these consequential damages, plus plaintiff's alleged direct damages, equal a total of exactly $20,000.

14. However, with respect to plaintiff's damaged suitcase, which the UTA Station Manager in Lagos returned to Paris for replacement, and which has not been returned to plaintiff, the Court finds that defendant must promptly fulfill its commitment to plaintiff and either provide a replacement suitcase or funds sufficient for plaintiff to purchase such a suitcase.

The Court is not without sympathy for plaintiff. However, "the fact remains that the Convention is a treaty to which the United States is bound, and the federal courts regularly enforce its damage limitations." *Barkanic v. General Administration of Civil Aviation of the People's Republic of China*, 923 F.2d 957, 964 (2d Cir.1991). Moreover, plaintiff had the option to pay a supplemental fee to purchase baggage insurance, an option he declined to exercise despite the fact that his suitcases contained over three thousand dollars in cash and thousands of dollars worth of other valuables. "A passenger need only multiply the amount recoverable per pound under the Convention ... by the weight of his baggage to arrive at [the amount recoverable under the Convention]. Once having made the calculation, a passenger has enough information to decide whether to purchase insurance." *Republic National Bank, supra*, 815 F.2d at 237 (upholding limitation of carrier's liability for loss of $2 million in cash to $634.90, based on Convention liability limit of $9.07 per pound).

### Conclusion

For the reasons set forth above, the parties' cross-motions for summary judgment are granted in part and denied in part, as follows: Defendant is liable to plaintiff for 17 kilograms of lost luggage at $20 per kilogram, equalling a total of $340; defendant is liable to plaintiff for the value of plaintiff's hand trolley, that is, $34; defendant shall provide plaintiff with a replacement suitcase, or with funds sufficient for plaintiff to purchase such a suitcase. In all other respects, defendant is not liable to plaintiff.

SO ORDERED.