Andrew B. **SIBEN** and Leslie Hyman Siben, Plaintiffs,

v.

AMERICAN AIRLINES, INC., Defendant.

No. 95 Civ. 3867 (RWS).

United States District Court, S.D. New York.

Jan. 30, 1996.

---

Bauman & Kunkis, P.C., New York City (Christopher Kendric, of counsel), for plaintiffs.

Biedermann, Hoenig, Massamillo & Ruff, New York City (Peter Hoenig, Michael Buchman, of counsel), for defendant.

## OPINION

SWEET, District Judge.

Defendant American Airlines, Inc. ("American") moves for partial summary judgment declaring that the rights of the parties are governed by the Warsaw Convention, thus limiting the Plaintiffs, Andrew Siben and Leslie Hyman Siben (the "Sibens") remedy for their lost luggage, and in the alternative, for dismissal under 12(b)(6) F.R.Civ.P. on the grounds that the Sibens fail to state a claim under any applicable theory of state law. For the reasons that follow, the motion for partial summary judgment is denied and the motion to dismiss is granted in part and denied in part.

### Parties

The Sibens, residents of New York, travelled on American in January 1995.

American, a common carrier by air, is a foreign corporation licensed to do business in the State of New York.

### Prior Proceedings

The Sibens originally brought this action in New York Supreme Court, New York County, by a summons and complaint served on May 1, 1995. The complaint alleged that American was negligent in its handling of their luggage and misrepresented the facts concerning the luggage in a fraudulent, intentional, or reckless way. The Sibens claimed that American's conduct resulted in the luggage being misplaced during their honeymoon, inconvenience from misinformation concerning the luggage's imminent arrival, the opening of and removal of items from the luggage, a ruined vacation, and the infliction of emotional distress on the newlyweds.

American served and filed its answer to the complaint on or about May 25, 1995. On May 26, 1995, American removed the action to this Court pursuant to 28 U.S.C. §§ 1441, *et seq.*

On October 13, 1995, American filed notice of this motion. Oral argument was heard on November 29, 1995, and the motion was considered fully submitted at that time.

### Facts

#### Undisputed Facts

On January 9, 1995, at approximately 7:00 a.m., the Sibens checked two pieces of luggage at the American ticket counter at John F. Kennedy Airport ("JFK") and were given two claim checks. On the Sibens' arrival at Anguilla, only one piece of their luggage had arrived with them. On January 18, 1995, the night before the Sibens' scheduled return departure, they received a telephone call informing them that the missing luggage had arrived.

In addition to these undisputed facts, the Sibens have alleged American's ownership of the airplanes that carried them during their trip; American has denied ownership, but averred control and operation of the aircraft. American's control and operation of the airplanes on which the Sibens flew will be taken as common ground.

#### Facts as Alleged

In their complaint, Plaintiffs make the following allegations:

American is a domestic corporation organized and existing under the laws of the State of New York. The Sibens were lawful passengers on a honeymoon trip. At approximately 3:45 p.m. on January 9, 1995, after discovering that the suitcase was missing, the Sibens completed an American Airlines, Inc. Lost Property Report. Between January 9

and January 17, American employees gave the Sibens numerous assurances that the luggage would be found or had been found and that the luggage would be delivered to them. The information given by American employees was known to be false when made, and/or made with a pretense of actual knowledge when knowledge did not actually exist, and/or was given with the intent to deceive and defraud the Sibens.

During this time, the Sibens travelled repeatedly to the airport to retrieve the lost luggage, not knowing the truth as to the luggage, and, based on American's assurances of the luggage's imminent arrival, refrained from purchasing necessary items. On the return of the missing bag the night before the Sibens' flight back to JFK, it was apparent that the luggage had been opened and items were missing. These events resulted in lost as well as misplaced property, emotional distress, interruptions of the Sibens' honeymoon, and the ruination of their honeymoon trip, damaging the Sibens in the amount of Five Hundred Thousand Dollars.[1]

The Sibens have also submitted affidavits which provide much greater detail than the complaint, including one from Andrew Siben that incorporates a complaint letter to American's consumer relations department. The letter, in turn, refers to attached copies of baggage claim checks.

The claim checks show no indication either of number of bags checked or the weight of the bags. The misplaced bag weighed approximately eighty pounds and contained approximately ninety to ninety-five percent of the Sibens' clothing for their vacation. Airport personnel informed Mr. Siben that the bag would be delivered the following morning. Two days later, the bag not having arrived, an American representative authorized the Sibens to buy some clothing. On January 12, the wrong bag was delivered to the Sibens' room. That evening, an American representative informed Mr. Siben that the bag would be sent from JFK to the Anguilla airport by the next morning. The

Sibens went to the airport the next day, but did not find their bag.

Two days later, an hour before the Sibens' departure for Jumby Bay Island, off Antigua, an American representative gave the Sibens a check for $400 and a travel voucher worth $1,336 toward a future flight on American.

In the next few days, American personnel gave the Sibens "numerous" assurances, which proved empty, that their bag would be delivered. Then, the night before the Sibens were to return home, the bag arrived at Jumby Bay. A number of items were missing, including a 40–year–old shawl of sentimental value.

Among the grievances arising from this episode was that because the missing bag included needed clothing, the Sibens were unable to engage in activities such as tennis, jogging, and various water sports. Mr. Siben had a similar experience in 1994: American misplaced his bag for five days when he flew from JFK to San Diego.

### Discussion

## I. Legal Standards

### A. Standards For Summary Judgment

A motion for summary judgment may be granted only when there is no genuine issue of material fact remaining for trial and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *Rodriguez v. Sweeney*, 72 F.3d 1051 (2d Cir. 1995); *Silver v. City Univ.*, 947 F.2d 1021, 1022 (2d Cir.1991). "[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them." *Gallo v. Prudential Residential Servs., Ltd. Partnership*, 22 F.3d 1219, 1224 (2d Cir. 1994). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The moving party bears the burden of proving

---

1. American, in its Verified Answer, did not deny the Two Hundred and Fifty Thousand Dollars in damage alleged in paragraph 19 of the Complaint, but given its denial of the predicate facts leading to this claim of damage, American's denial of the damage claim itself is assumed.

that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); *Brady*, 863 F.2d at 210; *Pittston Warehouse Corp. v. American Motorists Ins. Co.*, 715 F.Supp. 1221, 1224 (S.D.N.Y.1989), *aff'd*, 954 F.2d 62 (2d Cir.1992).

Summary judgment is viewed "as an integral part of the Federal rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex*, 477 U.S. at 327, 106 S.Ct. at 2555 (citations omitted). Once the moving party has met its burden of coming forward with evidence to show that no material fact exists for trial, the non-moving party must do more than "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986); *see also Anderson*, 477 U.S. at 252, 106 S.Ct. at 2512 ("the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact").

**B.** *The Liability Limitations of the Warsaw Convention Do Not Apply*

■ The Warsaw Convention [2] creates an exclusive cause of action for damage sustained in international air travel, establishing an absolute right to compensation while limiting the recovery available in all suits to which it applies. *See* Article 1 ("This convention shall apply to all international transportation of person, baggage, or goods performed by aircraft for hire"); *see also In re Air Disaster at Lockerbie Scotland on Dec. 21, 1988*, 928 F.2d 1267, 1271 (2d Cir.1991); *Pflug v. Egyptair Corp.*, 961 F.2d 26, 28 (2d Cir.1992).

The Convention provides for liability for lost baggage in Article 18 [3] and, in Article 19 for baggage delayed in transportation. [4] Article 24 of the Convention limits damage actions covered by articles 18 and 19 to the limits set out by the Convention. [5] Among other things, the Convention limits liability for lost or damaged baggage, according to the terms of Article 22, to an amount currently equivalent to $9.07 per pound.

■ Articles 25 and 4 of the Convention remove this limitation of liability in certain instances which are described below:

Article 25: (1) The carrier shall not be entitled to avail himself of the provisions of this convention which exclude or limit his liability, if the damages is caused by his wilful misconduct or by such default on his part as, in accordance with the law of the court to which the case is submitted, is considered to be equivalent to wilful misconduct.

"Willful misconduct requires either the intentional performance of an act with knowledge that the performance of that act will probably result in injury or the intentional

---

**2.** Convention for the Unification of Certain Rules Relating to International Transportation by Air, concluded at Warsaw, Poland, October 12, 1929, adhered to be the United States, June 27, 1934, 49 Stat. 3000, 3014, *reprinted in* 49 U.S.C. following § 1502 (1976).

**3.** The relevant text of Article 18 is as follows:

(1) The carrier shall be liable for damage sustained in the event of the destruction or loss of, or of damage to, any checked baggage or any goods, if the occurrence which caused the damage so sustained took place during the transportation by air.

(2) The transportation by air with the meaning of the preceding paragraph shall comprise the period during which the baggage or goods are in charge of the carrier, whether in an airport or on board an aircraft, or, in case of a landing outside an airport, in any place whatsoever.

(3) ... If [transportation by land performed outside an airport] takes place in the performance of a contract for transportation by air, for the purpose of loading, delivery or transshipment, any damage is presumed, subject to proof to the contrary, to have been the result of an event which took place during the transportation by air.

**4.** The text of Article 19 is as follows:

The carrier shall be liable for damage occasioned by delay in the transportation by air of passengers, baggage, or goods.

**5.** The relevant text of Article 24 is as follows:

(1) In cases covered by articles 18 and 19 any action for damages, however founded, can only be brought subject to the conditions and limits set out in this convention.

performance of an act in such a manner as to imply reckless disregard of the probable consequences." *Republic Nat. Bank of New York v. Eastern Airlines,* 815 F.2d 232, 238–39 (2d Cir.1987) (citations and internal quotation marks omitted).

The complaint alleges that American employees informed the Sibens that the suitcase had arrived at the airport, when it appeared that it had not. There is nothing in the record to refute that this happened and, as such, the assertion of this exception cannot be foreclosed at this juncture.

The second exception, under Article 4, can be successfully asserted by the Sibens. Article 4 of the Convention states:

(1) For the transportation of baggage, other than small personal objects of which the passenger takes charge himself, the carrier must deliver a baggage check.

(2) The baggage check shall be made out in duplicate, one part for the passenger and the other part for the carrier.

(3) The baggage check shall contain the following particulars:

(a) The place and date of issue;

(b) The place of departure and of the destination;

(c) The name and address of the carrier or carriers;

(d) The number of the passenger ticket;

(e) A statement that the delivery of the baggage will be made to the bearer of the baggage check;

(f) The number and weight of the packages;

(g) The amount of the value declared in accordance with article 22(2);

(h) A statement that the transportation is subject to the rules relating to liability established by this convention.

(4) the absence, irregularity, or loss of the baggage, check shall not affect the existence or the validity of the contract of transportation which shall none the less be subject to the rules of this convention. Nevertheless, if the carrier accepts baggage without a baggage check having been delivered, or if the baggage check does not contain the particulars set out at (d), (f),

and (h) above, the carrier shall not be entitled to avail himself of those provisions of the convention which exclude or limit his liability.

Courts in this Circuit and in New York State, when applying the Convention to non-commercial passengers, have interpreted the Convention strictly. *See Vekris v. Peoples Express Airlines, Inc.,* 707 F.Supp. 675, 678 (S.D.N.Y.1988); *Gill v. Lufthansa German Airlines,* 620 F.Supp. 1453, 1456 (E.D.N.Y.1985); *Kupferman v. Pakistan International Airlines,* 108 Misc.2d 485, 438 N.Y.S.2d 189 (Civ.Ct.1981) (regarding noncompliance with 4(3)(f)); *see also Chukwuma v. Groupe Air France,* 767 F.Supp. 43, 47 (S.D.N.Y.1991) (adopting the standard, but finding that 4(4) did not apply in light of the facts of the case), *aff'd* 962 F.2d 2 (2d Cir. 1992).

In *Gill,* the Court stated:

The meaning of Article 4(4) is clear, if a carrier fails to give a passenger a check that does not contain any of the three vital elements of the ticket number, notice of the Convention's applicability, and the number and weight of the items, the carrier cannot invoke the baggage liability limitations of the Convention.

620 F.Supp. at 1455.

Defendant's effort to characterize the Sibens as sophisticated travellers and thus subject them to the more lenient interpretations of Article 4 that are applied to claims of commercial travelers, are unavailing. *See Republic Nat. Bank of New York v. Eastern Airlines,* 815 F.2d 232, 237 (2d Cir.1987) ("[W]e hold that where, as here, the traveler is more like a commercial shipper than a typical airline passenger, our analysis in *Exim* [where court did not interpret language of Convention literally], applies to claims brought under Article 4 . . ."). While it is true that Siben is a lawyer and has had his luggage delayed by American in the past, this does not transform him into a commercial passenger of the sort contemplated in the *Republic* line of cases.

Plaintiffs have presented baggage checks that do not contain the information required in section 4(3)(f) and as such, partial sum-

278

mary judgment on the liability limitations of Section 22 is denied.

## II. *Motion to Dismiss*

### A. *Standards for Evaluating a 12(b)(6) Motion*

■ On a Rule 12(b)(6) motion to dismiss, the factual allegations of the complaint are presumed to be true and all factual inferences must be drawn in the plaintiffs' favor and against the defendants. *See Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *Cosmas v. Hassett*, 886 F.2d 8, 11 (2d Cir.1989); *Dwyer v. Regan*, 777 F.2d 825, 828–29 (2d Cir.1985). Accordingly, the factual allegations set forth and considered herein are taken from the Plaintiffs' Complaint and do not constitute findings of fact by the Court. They are presumed to be true only for the purpose of deciding the present motion to dismiss.

Rule 12(b)(6) imposes a substantial burden of proof upon the moving party. A court may not dismiss a complaint unless the movant demonstrates "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *H.J., Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 249–50, 109 S.Ct. 2893, 2905–06, 106 L.Ed.2d 195 (1989); *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232–33, 81 L.Ed.2d 59 (1984); *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957).

The Complaint alleges based on slightly different theories that American was negligent in its operation of the aircraft and the airlines and that its negligence resulted in fraudulent misrepresentation and the infliction of emotional distress. The second cause of action alleges intentional or reckless actions which resulted in the infliction of emotional distress. Defendants move to dismiss four possible state claims: fraud, negligent misrepresentation, negligent infliction of emotional distress and intentional infliction of emotional distress.

The motion to dismiss these four claims will be addressed sequentially:

### B. *The Claim for Fraud Survives*

Defendants have moved pursuant to Rule 12(b)(6) to dismiss the claim for fraud.

■ Five elements are necessary to sustain a claim in fraud under New York law: (1) misrepresentation of a material fact; (2) the falsity of the misrepresentation; (3) scienter, or intent to defraud; (4) reasonable reliance on that representation; and (5) damage caused by such reliance. *May Dep't Stores Co. v. International Leasing Corp.*, 1 F.3d 138, 141 (2d Cir.1993).

■ American asserts that Plaintiffs have failed to demonstrate how the statement that the bag "had been found and that it would be delivered to plaintiffs" meets the requirements of falsity and scienter. As to falsity, accepting the allegations as true, the statement was false since the bags had not been found on the first several occasions when they were given assurances.

■ "To satisfy the scienter requirement, a plaintiff need not allege facts which show the defendant had a motive for committing fraud, as long as the plaintiff ... adequately identifies the circumstances indicating conscious behavior by the defendants." *Cosmas v. Hassett*, 886 F.2d 8, 13 (2d Cir.1989). Plaintiffs must at a minimum, however, allege facts that give rise to a strong inference of fraudulent intent. *See Red Ball Interior Demolition Corp. v. Palmadessa*, 874 F.Supp. 576, 589 (S.D.N.Y.1995) (citations omitted); *Breard v. Sachnoff & Weaver, Ltd.*, 941 F.2d 142, 144 (2d Cir.1991). The requisite strong inference as to fraudulent intent may be established by factual allegations which show whether Defendants had both motive and opportunity to commit fraud or which constitute strong circumstantial evidence of conscious misbehavior or recklessness. *See In re Time Warner Inc. Sec. Litig.*, 9 F.3d 259, 268–69 (2d Cir.1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 1397, 128 L.Ed.2d 70 (1994).

Plaintiffs' allegations that American told them repeatedly that the suitcase had been found coupled with the knowledge that it had not been, are sufficient to state a claim for fraud.

## C. A Claim for Negligent Misrepresentation Survives

 Under New York law, the elements of negligent misrepresentation are: (1) carelessness in imparting words; (2) upon which others were expected to rely; (3) upon which they did act or failed to act; (4) to their damage; further, (5) the author must express the words directly, with some relation [of] duty or care. *The Pits, Ltd. v. American Express Bank International,* 911 F.Supp. 710, 717 (S.D.N.Y.1996) (*citing In re Drexel Burnham Lambert Group, Inc.,* 151 B.R. 49 (S.D.N.Y.1993)).

 The Sibens allege in their Complaint that American's employees gave numerous assurances to the Plaintiffs that "the luggage would be found or had been found … and based on said representations, plaintiffs' not only spoke to defendant's employees on numerous occasions to retrieve their lost luggage and did not purchase necessary items due to defendant's employees assurances that the luggage would be found and delivered imminently."

Assuming, as one must on a motion to dismiss, that the allegations are true, the Sibens have alleged a claim for negligent misrepresentation. If the employees falsely or without checking told the Sibens the luggage was found and it was not, they have sufficiently alleged carelessness, made statements upon which the Sibens would rely and upon which they did act when they went to the airport or did not purchase replacement items. American owed the duty of care of a reasonable airline.

 Insofar as the statements from American were promissory, such as "the luggage will be found" there is no cause of action. No claim for negligent misrepresentation lies where the misrepresentation is promissory rather than factual. *Murray v. Xerox Corp.,* 811 F.2d 118, 123 (2d Cir.1987).

The cause of action will survive insofar as the misrepresentations were factual.

## D. Claim of Negligent Infliction of Emotional Distress is Dismissed

 The standards for negligent infliction of emotional distress are set forth in *Bovsun v. Sanperi,* 61 N.Y.2d 219, 473 N.Y.S.2d 357, 461 N.E.2d 843 (1984). To state a cause of action, plaintiffs must allege the following elements:

1) that defendant was negligent in creating an unreasonable risk of bodily harm to the plaintiff;

2) that such conduct was a substantial factor in bringing about injuries to the plaintiffs; and

3) that the injuries are a consequence resulting from plaintiff's contemporaneous observation of serious physical injury or death inflicted by defendant's conduct on a member of plaintiff's immediate family in his or her presence.

*Bovsun,* 61 N.Y.2d at 223–24, 473 N.Y.S.2d 357, 461 N.E.2d 843.

 While physical injury is no longer a necessary element, a cause of action to recover damages for negligent infliction of emotional distress must generally be premised upon conduct which "unreasonably endangers" the plaintiff's physical safety. The New York cases indicate that while recovery is available for emotional injuries, there still must be an allegation that there was risk of bodily harm to the plaintiffs, in this case the Sibens. *See De Rosa v. Michelman,* 184 A.D.2d 490, 584 N.Y.S.2d 202 (2d Dep't 1992); *Lancellotti v. Howard,* 155 A.D.2d 588, 547 N.Y.S.2d 654 (2d Dep't 1989); *Callas v. Eisenberg,* 192 A.D.2d 349, 595 N.Y.S.2d 775 (1st Dep't 1993).

Plaintiffs make no such allegations and on that basis, the claim of negligent infliction of emotional distress must be dismissed.

## E. Claim for Intentional Infliction of Emotional Distress is Dismissed

 Under New York law, the intentional infliction of emotional distress requires (1) an extreme and outrageous act by the defendant, (2) intent by the defendant to inflict severe emotional distress, (3) resulting in severe emotional distress, (4) and that the distress be caused by the defendant's conduct. *See Mohamed v. Marriott Intern.,* 905 F.Supp. 141, 157 (S.D.N.Y.1995). That conduct must be "so outrageous in character,

and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." *Martin v. Citibank, N.A.,* 762 F.2d 212, 220 (2d Cir.1985).

 The conduct alleged in this complaint does not rise to this level[6]. A claim based on a theory of intentional infliction of emotional distress must fail.

### Conclusion

As described above, the motion for partial summary judgment is denied and the motion to dismiss is granted in part and denied in part. Specifically, claims for negligent or intentional infliction of emotional distress are not viable.

This Opinion resolves the issues raised in Defendant's Motion (Doc. # 9).

The parties shall complete all discovery, inspection and motions by May 1, 1996 and Plaintiffs shall submit a draft of the pretrial order to the Defendants on or before the completion of discovery.

The parties shall submit to the Court trial briefs, a joint proposed pretrial order in accordance with the Court's individual requirements by May 8, 1996. A final pretrial conference will be held on that day, May 8, at 4:30 p.m., and on that date the action shall be added to the trial calendar published in the New York Law Journal.

It is so ordered.

---

6. *Martin v. Citibank, N.A.,* 762 F.2d at 220 (finding no intentional infliction of emotional distress in the face of allegations that a worker was polygraphed only because of her race); *Collom v. Incorporated Village of Freeport,* 691 F.Supp. 637 (E.D.N.Y.1988) (allegations that police officer threatened to arrest plaintiff when he asked officer to see a warrant for eviction that the officer knew did not exist failed to state a claim for intentional infliction of emotional distress); *but see Kajtazi v. Kajtazi,* 488 F.Supp. 15 (E.D.N.Y. 1978) (father who abducted child from mother who had legal custody and falsely imprisoned child in Yugoslavia was sufficient to meet standards).