Tsui Yuan TSENG, Plaintiff,

v.

EL AL ISRAEL AIRLINES, LTD., Defendant.

No. 94 Civ. 3385 (LLS).

United States District Court, S.D. New York.

March 13, 1996.

Silk, Bunks & Suckle, P.C., New York City (Robert H. Silk, of counsel), for Plaintiff.

Cordon & Forsyth, New York City (Diane Westwood Wilson, Stephen J. Fearon, Debra A. Shields, of counsel), for Defendant.

### MEMORANDUM AND ORDER

STANTON, District Judge.

Plaintiff Tsui Yuan Tseng claims defendant El Al Israel Airlines, Ltd. ("El Al"), which searched her person and bags as she was boarding a flight, subjected her to assault, false imprisonment, physical and mental abuse and humiliation, and the loss of and damage to her property.

The case was tried to the court on March 7, 8, and 11, 1996. From my observation of the witnesses and exhibits, I find the preponderance of the credible evidence establishes the following facts. All Agreed Findings in the Consent Pretrial Order are found as facts, and are supplemented by the findings below.

## FACTS

On May 22, 1993, Ms. Tseng went to El Al's terminal at John F. Kennedy International Airport in Queens, New York to take a flight to Tel Aviv. While awaiting check-in she was queried about her reasons for the trip, asked to wait, and then taken to a small room with a few chairs and a table, where she was searched.

At the instruction of a uniformed man and woman, she put her luggage (a suitcase, a carry-on bag and her purse) on the table and unlocked it. The man and woman took out the contents of her luggage and put her things into small baskets, which they took into another room into which she was not allowed to follow.

The woman then told Ms. Tseng to take off her jacket, sweater, shoes, and belt, and to loosen and lower her blue jeans to just below her hip. The woman proceeded to search her, first by feeling her body by hand outside her clothes from head to toe, and then with an electronic security wand.

After an hour or so, they stuffed her things messily back into her luggage. She was then escorted to her plane. They told her to leave her suitcase there, and that it would be put on the plane.

During the flight, she felt sick, upset, and nervous, and had a headache. She glanced a few times in her carry-on bag, but its contents were so disorganized that she could not find anything.

At her hotel in Tel Aviv, she opened her suitcase, carry-on bag, and purse. She sorted through the messy contents and discovered that many of her clothes were stained and damaged, and that several items were missing, including a Rolex watch, a jade ring, some of her clothes, and a thousand dollars in cash. She called El Al's office in Tel Aviv, and was told that they could not do anything about the losses in Israel and to wait until she was back in the United States and then report them.

She returned to the United States on or about June 20, 1994. Around the end of June, she went to see her doctor for treatment of headaches, upset stomach, ringing in her ears, nervousness and sleeplessness, all of which had bothered her since she was searched. She also brought to El Al, in person, a letter dated July 1, 1994, complaining about her search and detention and listing the items that were missing and damaged.

El Al claims she was searched because her reasons for her trip appeared "illogical," but it is unable (for lack of memory and records) to specify how. It urges, and I accept, that the actual method of search of her person conformed to their usual practice.

## DISCUSSION

### A. BODILY INJURY

The parties dispute whether the Warsaw Convention applies to plaintiff's claims that she suffered injury as a result of her detention and search by El Al. In particular, they dispute whether her claimed injuries resulted from an "accident" within the meaning of Article 17 of the Convention, which states:

> The carrier shall be liable for damage sustained in the event of the death or wounding of a passenger or any other bodily injury suffered by a passenger, if the accident which caused the damage so sustained took place on board the aircraft or in the course of any of the operations of embarking or disembarking.

*Air France v. Saks*, 470 U.S. 392, 105 S.Ct. 1338, 84 L.Ed.2d 289 (1985), dealt with the definition of "accident" in Article 17. The Supreme Court concluded that "liability under Article 17 of the Warsaw Convention arises only if a passenger's injury is caused by an unexpected or unusual event or happening that is external to the passenger," and stated further that "This definition should be flexibly applied after assessment of all the circumstances surrounding a passenger's injuries." 470 U.S. at 405, 105 S.Ct. at 1345. In *Shen v. Japan Airlines*, 1994 WL 167989 (S.D.N.Y.), *aff'd*, 43 F.3d 1459 (2d Cir.1994), this court applied the Warsaw Convention to the detention, search, and confinement of passengers by Japan Airlines. *Id.* at *2.

Plaintiff argues that El Al's actions were not an "accident" but wilful misconduct, and therefore not covered by the Convention.

The record in this case does not support the proposition that the search of the plaintiff was wilful misconduct. The actual techniques for carrying out the search were those prescribed by El Al's procedures, and are reasonable in light of the need for discovering small dangerous objects, if the prospective passenger appears to pose a threat.

There is no evidence that the plaintiff actually posed such a threat, and there is no evidence explaining why she was selected to be searched. Although El Al's records state that her story was illogical, no reason is given why El Al personnel thought so.

It may have been a mistake. There may have appeared a basis for El Al's suspicions, although they ultimately proved groundless. However, there is no evidence and no basis for inferring that it was anything more than a mistake. Even if such a mistake can be characterized as misconduct, there is no basis for inferring that it was wilful. Accordingly, I find that it was not such wilful misconduct as might take the case outside the Convention's limitations of liability under Article 25.[1]

Occasional personal searches are recognized incidents of international air travel. The evidence shows that they occur two to four times a day at El Al alone, which averages over 1,000 times per year for that single airline.

Using the flexible application prescribed by the Supreme Court, such a routine search, applied erroneously to plaintiff in the course of embarking on the aircraft, is fairly accurately characterized as an accident; that is to say, an unexpected or unusual event or happening external to the passenger.

Accordingly, the Warsaw Convention applies.

■ Under the Convention, the case is governed by *Eastern Airlines, Inc. v. Floyd*, 499 U.S. 530, 111 S.Ct. 1489, 113 L.Ed.2d 569

(1991), in which the Supreme Court squarely considered and squarely disallowed any recovery for psychic or psychosomatic injury unaccompanied by bodily injury. 499 U.S. at 552, 111 S.Ct. at 1502.

Here, the plaintiff sustained no bodily injury. Her body was not injured by the woman who searched her by feeling the surface of her body outside her clothing with her hands, and by using an electronic security wand to detect metal objects. On the contrary, all of her personal injuries are attributable to her shock and outrage at the way she was treated. Although her injuries may have had physical manifestations, those are the types of psychic or psychosomatic injuries barred by *Floyd* and not the "bodily injury" for which compensation is available under Article 17 of the Convention.

The Convention precludes recovery on such claims under state law. Article 24 of the Convention provides:

(1) In the cases covered by articles 18 and 19 any action for damages, however founded, can only be brought subject to the conditions and limits set out in this convention.

(2) In the cases covered by article 17 the provisions of the preceding paragraph shall also apply....

*See In re Air Disaster at Lockerbie, Scotland,* 928 F.2d 1267 (2d Cir.) ("the Warsaw Convention preempts state law causes of action arising under it"), *cert. denied,* 502 U.S. 920, 112 S.Ct. 331, 116 L.Ed.2d 272 (1991).

Accordingly, Ms. Tseng's claims for personal injuries are dismissed.

## B. BAGGAGE

The Convention also applies to plaintiff's claims for damages to her checked and carry-on luggage.

■ "With respect to checked baggage, Article 18 provides for the strict liability of carriers for loss or damage sustained while

---

1. The Convention, in Article 25(1), provides:
   The carrier shall not be entitled to avail himself of the provisions of this convention which exclude or limit his liability, if the damage is caused by his wilful misconduct or by such

   default on his part as, in accordance with the law of the court to which the case is submitted, is considered to be equivalent to wilful misconduct.

under the control of the carrier." *Republic National Bank of New York v. Eastern Airlines, Inc.,* 815 F.2d 232, 236 (2d Cir.1987). Ms. Tseng's suitcase was under El Al's control when the items in her suitcase were lost and damaged, so El Al is liable for that damage and loss.

■ For claims of damage to carry-on baggage, the Convention imposes liability on the carrier if the damage is the result of an accident. *See Baker v. Lansdell Protective Agency, Inc.,* 590 F.Supp. 165, 167 (S.D.N.Y. 1984). The items in Ms. Tseng's carry-on baggage were lost and damaged as the result of the search, which was an accident, so El Al is liable for the damage to and loss of items in that carry-on baggage.

*1. Notice*

The parties dispute whether El Al escapes liability for the loss of and damage to items in plaintiff's baggage under the Convention's requirement that plaintiff give prompt notice to it of the loss.

■ Article 26 of the Convention provides, in pertinent part:

(2) In case of damage, the person entitled to delivery must complain to the carrier forthwith after the discovery of the damage, and at the latest, within 3 days from the date of receipt in the case of baggage and 7 days from the date of receipt in the case of goods. . . .

(3) Every complaint must be made in writing upon the document of transportation or by separate notice in writing dispatched within the times aforesaid.

Although Article 26 of the Convention on its face requires written notice to the carrier only when there is "damage" to baggage, notice is also required when items in baggage are lost, because "delivery of a package or container with part of its contents missing is damage and requires notice." *Denby v. Seaboard World Airlines, Inc.,* 575 F.Supp. 1134, 1141 (E.D.N.Y.1983), *rev'd on other grounds,* 737 F.2d 172 (2d Cir.1984).

■ At the time of plaintiff's flight, El Al had extended the time for passengers to give written notice to the carrier from three days, as provided above in Article 26 of the Convention, to seven days, as provided by Rule 55(E)(1) of El Al's tariff, which provides in pertinent part:

No action shall lie in the case of damage to baggage unless the person entitled to delivery complains to an office of carrier forthwith after the discovery of the damage, and at the latest, within seven (7) days from the date of receipt. . . .

That tariff was approved by the Civil Aeronautics Board, *see* International Passenger Rules and Fares Tariff, NTA (A) No. 324, ¶ C.A.B. No. 530, Rule 55(E), and governs here. *See Tishman & Lipp, Inc. v. Delta Air Lines,* 413 F.2d 1401, 1403 (2d Cir.1969) ("Tariffs filed with the Civil Aeronautics Board if valid, are conclusive and exclusive, and the rights and liabilities between airlines and their passengers are governed thereby").

Ms. Tseng submitted to El Al written notice of her damage in a letter dated July 1, 1993, which was 39 days after her flight to Tel Aviv. There is no evidence that she submitted written notice of the damage to El Al during the seven days after her flight.

Article 26(4) of the Convention provides

Failing complaint within the times aforesaid, no action shall lie against the carrier, save in the case of fraud on his part.

Accordingly, Ms. Tseng's claims for damage to her baggage are barred by the notice requirement of Article 26, unless there is "fraud" on the part of El Al.

■ In *Denby v. Seaboard World Airlines, Inc.,* 737 F.2d 172 (2d Cir.1984), the Second Circuit stated that the fraud exception "'is not of a restrictive nature,'" but includes "any intentional acts by the carrier or its agents which significantly decrease the likelihood of the shipper's giving notice during the brief period allowed." 737 F.2d at 183 (quoting N. Matte, Treatise on Air–Aeronautical Law 425 (1981)).

Ms. Tseng, after discovering at her hotel that items in her baggage were damaged and missing, promptly made a telephone call to El Al. An agent of El Al told her that they could not do anything about it and that she should talk to them back in the United States. That statement by El Al "signifi-

cantly decreased the likelihood" that she would give written notice of her damage to El Al during the brief period allowed. Accordingly, the fraud exception to the notice requirement applies in this case, and the notice requirement does not bar her claim for damage to her baggage.

### 2. Liability Limitations

Article 22(1) of the Convention limits the liability of a carrier for checked baggage "to a sum of 250 francs per kilogram", unless the passenger has made "a special declaration of value" of the baggage at the time it was delivered to the air carrier and "has paid a supplementary sum if the case so requires." By Order of the Civil Aeronautics Board this limit of liability has been converted to $20.00 per kilogram, or $9.07 per pound. *See* C.A.B. Order 74-1-16, 39 Fed.Reg. 1526 (1974).

 There has been no evidence showing how much Ms. Tseng's suitcase weighed. Where the weight of a passenger's baggage is not noted on the baggage check, the weight may be based on the maximum allowable weight as set forth in the airline's tariff. *Republic National Bank v. Eastern Airlines,* 639 F.Supp. 1410, 1411 (S.D.N.Y.1986), *aff'd,* 815 F.2d 232 (2d Cir.1987).

At the time of Ms. Tseng's flight, Rule 115(Q) of El Al's tariff provided:

(1) No article will be accepted for transportation if it exceeds the following maximum quantity/size/weight:

(a) If the maximum outside linear dimensions exceed 80 inches or if the article weighs more than 70 pounds (32 kilograms).

That tariff was approved by the Civil Aeronautics Board. *See* International Passenger Rules and Fares Tariff, NTA (A) No. 324, ¶ C.A.B. No. 530, Rule 115(Q). Because the maximum weight of any article of baggage that Ms. Tseng could have checked with El Al is 70 pounds, El Al's liability for her

checked suitcase is limited to $9.07 per pound times 70 pounds, which is $634.90.

The Convention, in Article 22(3), also limits El Al's liability for "objects of which the passenger takes charge himself"—that is, unchecked or carry-on luggage—to "a sum of 5,000 francs per passenger." Because the Civil Aeronautics Board has converted 250 francs to 20 dollars, *see* C.A.B. Order 74–1–16, 39 Fed.Reg. 1526 (1974), 5,000 francs is converted to 400 dollars.

 Therefore, the Convention limits [2] El Al's liability for the damage sustained to the plaintiff's baggage to $634.90 for her checked baggage and $400.00 for her unchecked baggage. The evidence shows that the monetary value of the damage to and loss of items in her checked and unchecked baggage, respectively, exceeded those amounts. Accordingly, plaintiff is entitled to recover for the damage to her baggage in the amount of $1034.90.

### CONCLUSION

Because the Warsaw Convention precludes recovery for emotional injury or for the physical manifestations of such injury, plaintiff's claims seeking such recovery are dismissed.

For her claims of damage to and loss of items in her baggage, plaintiff is entitled to damages in the amount of $1034.90, plus prejudgment interest according to law.

The Clerk is directed to enter judgment accordingly. So ordered.

---

2. The evidence does not establish that the loss of and damage to the items in plaintiff's luggage constituted such willful misconduct as might take the case outside the Convention's limitations of liability under Article 25. *See Chukwuma v. Groupe Air France, Inc.,* 767 F.Supp. 43, 48 (S.D.N.Y.1991) (to presume willful misconduct "solely on the basis of the fact that some of his luggage was lost or stolen" is "a presumption that would severely undercut Article 22's limitations of liability"), *aff'd,* 962 F.2d 2 (2d Cir. 1992).