**NEW PENTAX FILM, INC., Plaintiff,**

v.

**TRANS WORLD AIRLINES, INC., Defendant.**

No. 93 Civ. 8701 (JSM).

United States District Court,
S.D. New York.

Aug. 5, 1996.

---

John H. Reichman, Gold & Wachtel, New York City, for plaintiff.

Karin A. Schlosser, Bigham Englar Jones & Houston, New York City, for defendant.

## MEMORANDUM OPINION AND ORDER

MARTIN, District Judge:

### I. *Background*

Plaintiff New Pentax Film, an italian film production and distribution company, is the owner of the film "La Ballata di Ren Ham" ("La Ballata"), which was scheduled to be shown at the Fort Lauderdale Film Festival on November 20, 1991. On November 18, 1991, the president and other representatives of plaintiff (collectively, "plaintiff") boarded a Trans World Airlines ("TWA") flight from Rome, Italy to Fort Lauderdale, Florida to attend the festival. The flight stopped at JFK airport in New York City. In Rome, plaintiff checked four suitcases and one film canister, which contained the copy of La Ballata to be shown at the film festival.

Defendant gave plaintiff four baggage checks for the luggage, but did not issue a separate check for the film canister. The checks did not include the weight of the luggage. Upon arrival at JFK, plaintiff was informed that defendant could not locate one suitcase and the film canister. Plaintiff's representatives proceeded to Fort Lauderdale, where they filed a lost luggage report with defendant on November 19, 1991, and notified defendant of their plans to show La Ballata at the film festival on the next day. Defendant did not locate the film canister until November 23, 1991, and plaintiff was therefore unable to show the film at the festival.

On January 31, 1992, defendant filed for relief under Chapter 11 of the Bankruptcy Code, after which all pre-petition claims against defendant were automatically stayed pursuant to 11 U.S.C. § 362. The deadline for filing a proof of claim against defendant

in bankruptcy court was May 15, 1992. On July 30, 1992, the bankruptcy court entered an order establishing the procedure for processing requests to modify the automatic stay against defendant with respect to litigation of insured claims (the "July lift-stay order").

In March 1992, after defendant filed for bankruptcy but before the deadline for filing proofs of claim, plaintiff wrote defendant and informed it that plaintiff had incurred damages as a result of defendant's temporary loss of La Ballata. Defendant responded on May 11, 1992, four days before the proof of claims deadline, by requesting further information from plaintiff. Defendant's letter did not mention defendant's bankruptcy or the proof of claim deadline. After plaintiff provided the requested information, followed several months later by a letter requesting a response from defendant, defendant's insurance representatives made a December 1992 settlement offer of $634.90 to plaintiff. In that letter offer, defendant informed plaintiff that TWA had filed for bankruptcy and that any settlement was thus subject to approval by the bankruptcy court.

In June 1993, defendant informed plaintiff about the bankruptcy court's July lift-stay order and told plaintiff that it would stipulate to a lifting of the automatic stay in accordance with that order. On August 30, 1993, after the parties negotiated the wording of the stipulation, plaintiff's counsel sent signed copies to defendant for its signature. However, in August 1993 the bankruptcy court had confirmed defendant's Second Amended Plan of Reorganization and, on September 22, 1993, had entered an order establishing the procedure concerning post-confirmation litigation of pre-petition fully insured claims (the "September lift-stay order"), thereby necessitating a new stipulation between plaintiff and defendant before the automatic stay could be lifted to allow plaintiff to file its claim.

On October 20, 1993, defendant forwarded a copy of the September lift-stay order to plaintiff so that the parties could enter into a new stipulation. On November 22, 1993, plaintiff returned a signed copy of the stipulation to defendant for defendant's signature. After defendant signed, plaintiff submitted the stipulation to this Court, and the Court signed it on December 17, 1993, thereby lifting the bankruptcy stay and allowing plaintiff's to file this action. Plaintiff did so on the same day.

The complaint seeks damages caused by defendant's temporary loss of the film. In its answer, defendant asserted various affirmative defenses. These included the arguments that: 1) defendant's liability is limited by applicable provisions of the Warsaw Convention; 2) this action is time-barred by the two-year statute of limitations in the Warsaw Convention and by plaintiff's failure to file a proof of claim in defendant's bankruptcy proceeding before the bar date; and 3) plaintiff failed to file a timely notice of claim with defendant as required by the Warsaw Convention.

Plaintiff now moves for summary judgment on the issues of limited liability and statute of limitations. Defendant moves to dismiss plaintiff's complaint for failure to file a proof of claim in bankruptcy court and failure to provide proper written notice of claim as required by the Warsaw Convention.

## II. *Discussion*

Federal Rule of Civil Procedure 56 provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).

In a motion for summary judgment, all inferences drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 993, 8 L.Ed.2d 176 (1962). In order to defeat a motion for summary judgment, the nonmoving party must demonstrate that there is a genuine dispute of material fact. Thus, the party opposing the motion may not rest on the allegations or denials of its pleadings but must set forth specific facts, by affidavit or otherwise, showing that there is a

genuine issue for trial. Fed.R.Civ.P. 56(e). These facts must go to a material matter, and must be sufficient to satisfy the Court that enough evidence exists so that the finder of fact could reasonably find for the party opposing the motion. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248–52, 106 S.Ct. 2505, 2510–12, 91 L.Ed.2d 202 (1986).

## A. *Statute of Limitations*

The parties agree that the Warsaw Convention, which governs the international transport of good by air, *see Distribuidora Dimsa v. Linea Aerea Del Cobre*, 976 F.2d 90, 93 (2d Cir.1992), generally applies to plaintiff's delayed luggage claim. It is also undisputed that the Warsaw Convention contains a two-year statute of limitations for damages actions. Article 29, which sets the limitations period, states:

> (1) The right to damages shall be extinguished if an action is not brought within 2 years, reckoned from the date of arrival at the destination, or from the date on which the aircraft ought to have arrived, or from the date on which the transportation stopped.
>
> (2) The method of calculating the period of limitation shall be determined by the law of the court to which the case is submitted.

Convention for Unification of Certain Rules Relating to International Transportation by Air, Oct. 12, 1929, 49 Stat. 3000, T.S. No. 876, 137 L.N.T.S. 11, reported at 49 U.S.C. § 40105 note, Warsaw Convention, Article 29 (the "Warsaw Convention").

Plaintiff filed this action on December 17, 1993, some two years and one month after the temporary loss of the film on November 19, 1991. Defendants thus argue that this action is time-barred for failure to file within the Warsaw Convention's two year statute of limitations.

Plaintiff argues that, pursuant to Article 29(2), the Court should toll the two-year limitations period because a provision of New York law tolls actions that have been stayed by a court or statutory prohibition. Here, the prohibition would be the automatic stay in defendant's bankruptcy proceeding. However, in *Royal Insurance Co. v. Emery Air Freight Corp.*, 834 F.Supp. 633 (S.D.N.Y.

1993), Judge Haight rejected such a reading of Article 29(2), holding that "[t]he legislative history shows that the drafters of the [Warsaw] Convention specifically considered and rejected a proposed provision that would have allowed the statute of limitations to be tolled according to the law of the forum state." *Id.* at 636. Instead, Article 29(2) simply "allows courts to determine in accordance with local law when an action has been 'brought' as required by Article 29(1)." *Id.*

Under Judge Haight's reading of Article 29(2), which this Court adopts, plaintiff's argument for tolling under New York law must fail. However, the Bankruptcy Code contains a provision which, like the New York law cited by plaintiff, protects potential plaintiffs with claims for which the statute of limitations would otherwise expire during the pendency of a court or statutory stay. Section 108(c) of the Bankruptcy Code, entitled "Extension of time," provides in relevant part:

> (c) if applicable nonbankruptcy law, ... fixes a period for commencing or continuing a civil action in a court other than a bankruptcy court on a claim against the debtor, ... and such period has not expired before the date of the filing of the [bankruptcy] petition, then such period does not expire until the later of—
>
>> (1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; or
>>
>> (2) 30 days after notice of the termination or expiration of the stay under section 362, ... with respect to such claim.

11 U.S.C. § 108(c). This section does not serve to toll the applicable nonbankruptcy law's statute of limitations, but rather "calls for applicable time deadlines to be extended for 30 days after notice of the termination of a bankruptcy stay, if any such deadline would have fallen on an earlier date." *Aslanidis v. U.S. Lines, Inc.*, 7 F.3d 1067, 1073 (2d Cir. 1993).

Congress enacted § 108(c) in recognition of the fact "that a petition in bankruptcy could sometimes give a debtor unfair advan-

tage over a claimant by allowing the debtor to remain under the protection of the automatic stay until the limitation period governing the claimant's action had expired." *In Re Morton,* 866 F.2d 561, 566 (2d Cir.1989). Section 108(c) thus serves "to solidly preserve the rights of a party 'stayed from commencing or continuing an action against the debtor because of the bankruptcy case.'" *Id.* (quoting S.R.Rep. No. 95–989, 95th Cong., 2d Sess. 30 (1978); H.R. No. 95–595, 95th Cong., 2d Sess. 318 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5816, 6275); *see also G.W. White & Son, Inc. v. Tripp,* 1995 WL 65058 at *3 (N.D.N.Y.1995) (same).

As neither party addressed the § 108(c) issue in their original submissions, the Court requested supplemental briefing on the following question:

> Did plaintiff, pursuant to 11 U.S.C. § 108(c) as construed in *Aslanidis v. U.S. Lines, Inc.,* 7 F.3d 1067 (2d Cir.1993), have a period of thirty days after lifting of the injunction in the bankruptcy case, to file this action under the Warsaw Convention?

The parties have cited no cases—and the Court has found none—that address the Bankruptcy Code's § 108(c) 30–day extension in connection with the Warsaw Convention's two-year statute of limitations. Apparently, this is a case of first impression. However, there are general principles relevant to resolution of the issue.

■ Contrary to defendant's contentions, the Bankruptcy Code is not a "local law" that is trumped by the Warsaw Convention. "By the constitution, laws made in pursuance thereof, and treaties made under the authority of the United States, are both declared to be the supreme law of the land, and no paramount authority is given to one over the other." *Chae Chan Ping v. United States,* 130 U.S. 581, 600, 9 S.Ct. 623, 627–28, 32 L.Ed. 1068 (1889); *see also Chew Heong v. United States,* 112 U.S. 536, 540, 5 S.Ct. 255, 256, 28 L.Ed. 770 (1884). "The Warsaw Convention, by virtue of its status as a treaty made under the authority of the United States, is the supreme law of the land, equal in stature and force to the domestic laws of the United States." *Smith v. Canadian Pacific Airways,* 452 F.2d 798, 801 (2d Cir.

1971). The Bankruptcy Code, a federal statute, is thus on equal footing with the Warsaw Convention.

■ If there is any conflict between the Bankruptcy Code and the Warsaw Convention, the "last in time" principle dictates that the Bankruptcy Code—which was enacted more than forty years after the Warsaw Convention—prevails with respect to the conflicting provisions. This principle recognizes that, when a treaty and a federal law "relate to the same subject, the court will always endeavor to construe them so as to give effect to both, if that can be done without violating the language of either; but, if the two are inconsistent, the one last in date will control the other...." *Whitney v. Robertson,* 124 U.S. 190, 194, 8 S.Ct. 456, 458, 31 L.Ed. 386 (1888); *see also Chew Heong,* 112 U.S. at 549–550, 5 S.Ct. at 259–61. Thus, "'so far as a treaty made by the United States with any foreign nation can become the subject of judicial cognizance in the courts of this country, it is subject to such acts as congress may pass for its enforcement, modification, or repeal.'" *Chae Chan Ping,* 130 U.S. at 600, 9 S.Ct. at 628 (quoting *The Head Money Cases,* 112 U.S. 580, 599, 5 S.Ct. 247, 254, 28 L.Ed. 798 (1884)). *See also Committee of U.S. Citizens in Nicaragua v. Reagan,* 859 F.2d 929, 936 (D.C.Cir.1988) (same).

As noted above, resort to the extension provision of § 108(c) in an action governed by the Warsaw Convention, with its two-year statute of limitations, is an issue of first impression. However, courts have held § 108(c) applicable in connection with statutes of limitations contained in federal statutes. *See e.g., Aslanidis,* 7 F.3d 1067 (2d Cir.1993) (Jones Act); *Greenwald v. Axelrod,* 48 B.R. 263, 273 (S.D.N.Y.1984) (applying § 108 precursor to extend limitations period for filing § 1983 action); *Grotting v. Hudson Shipbuilders, Inc.,* 85 B.R. 568, 569 (W.D.Wash.1988) (applying § 108 extension in federal maritime tort action); *United States v. Hardeman,* 260 F.Supp. 723, 725 (M.D.Fla.1966) (applying § 108 precursor to extend limitations period for filing Miller Act action).

This case presents exactly the type of situation that § 108(c) was intended to address. Due to the automatic stay in defendant's bankruptcy case, plaintiff could not file its Warsaw Convention claim until the stay was lifted. The two-year statute of limitations under the Warsaw Convention expired while the parties negotiated the final stipulation. Therefore, without the extension of § 108(c), plaintiffs in this case would be barred from filing a claim which became untimely during the pendency of a bankruptcy stay.

Defendant also argues that, should the Court find § 108(c) applicable, plaintiff's claim is still untimely because plaintiff failed to file within thirty days of the bankruptcy court's July 30, 1992 Order making it possible for the parties to enter into a lift-stay stipulation. Defendant's argument is without merit. The parties negotiated a stipulation, and then re-negotiated when defendant informed plaintiff that a new stipulation was necessary. Pursuant to § 108(c), the thirty-day period begins to run when the automatic stay is lifted. Here, that period began when this Court signed the stipulation lifting the stay on December 17, 1993. As plaintiff filed this action on that very day, the filing was clearly timely under the period set forth in § 108(c).

Accordingly, plaintiff's motion for summary judgment on the statute of limitations issue is granted.

### B. *Failure To File A Proof Of Claim In Bankruptcy Court*

Defendant argues that plaintiff's claim must be dismissed because plaintiff failed to file a proof of claim by the May 15, 1992 claim bar date in bankruptcy court. Plaintiff alerted defendant of its claim by letter approximately two months before the proof of claim deadline. Defendant replied by letter on May 11, 1992—only four days before the deadline—by requesting more information from plaintiff. Defendant did not mention either the deadline or even the fact that defendant had filed for bankruptcy. In fact, defendant did not inform plaintiff that it had filed for chapter 11 protection until December 3, 1992, well after the claim deadline.

Plaintiff cannot be penalized for failing to file a claim when plaintiff did not have notice of the claim bar date, because "implicit in the strict time requirements of the bankruptcy rules is the assumption that a creditor has received notice of the bankruptcy petition." *In re Dodd*, 82 B.R. 924, 928 (N.D.Ill.1987). *See also City of New York v. New York, N.H. & H.R. Co.*, 344 U.S. 293, 73 S.Ct. 299, 97 L.Ed. 333 (1953); *In re Barnett*, 42 B.R. 254 (Bankr.S.D.N.Y.1984); *In re Yoder Co.*, 758 F.2d 1114 (6th Cir.1985). Furthermore, in certain circumstances strict compliance with the procedures for filing a proof of claim is unwarranted. *In re PCH Associates*, 949 F.2d 585, 605 (2d Cir.1991). This is such a case.[1]

In addition, defendant signed a stipulation agreeing to lift the automatic stay in the bankruptcy proceeding in order to allow this action to proceed. Therefore, defendant is estopped from now arguing that plaintiff should have filed a proof of claim in bankruptcy court.

Accordingly, defendant's motion to dismiss on the grounds of failure to file a proof of claim is denied.

### C. *Written Notice Of Claim Pursuant To The Warsaw Convention*

In order to seek damages in an action governed by the Warsaw Convention, a claimant must have made a timely written claim to the carrier within the time periods set forth in Article 26. 49 U.S.C. § 40105, note, Warsaw Convention, art. 26(2). In the case of damages caused by delay, a complaint to TWA must be made within 21 days from

---

1. Defendant appears to contend that an April 10, 1992 Wall Street Journal publication informing creditors that the proof of claim deadline was May 15, 1992, is sufficient notice to plaintiff. However, plaintiff resides in Italy and was without United States counsel at that point in time. Furthermore, defendant was aware of plaintiff's claim before the bar date and could certainly have included the proof of claim deadline in its May 11, 1992 letter to plaintiff. Under these circumstances, the publication was not "notice reasonably calculated ... to apprise interested parties of the pendency of the action." *Mullane v. Central Hanover Bank*, 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950).

the date on which the baggage or goods were placed at the disposal of the claimant. *Id.* (as modified by TWA's international passenger tariff, extending period to file claim from 14 to 21 days).

Pursuant to Article 26(4), the result of a failure to comply with the notice requirement of Article 26(2) is that "no action shall lie against the carrier, save in the case of fraud on his part." *Id.*, art. 26(4). It is undisputed that plaintiff filed a lost luggage claim with defendants within the Convention's time limits. However, defendant argues that the lost luggage claim was cured when defendant found and delivered the items, and that plaintiff was required—but failed—to file a second claim for delay damages within 21 days of receipt of the baggage.

In support of this argument, defendant cites the case of *Bennett Importing v. Continental Airlines*, 21 Av.Cas. (CCH) 17,917 (D.Mass. Dec. 27, 1988), in which the court found that plaintiff's notice of loss to defendant was cured by delivery of the goods, and that a later claim for delay damages was barred for failure to comply with the notice requirements of the Warsaw Convention. *Id.* at 17,922. However, the *Bennett* court noted that, because plaintiff's claim letter cited loss of the entire shipment, and because defendant received the letter a week after it delivered that shipment, "it was reasonable for [defendant] to assume that there was no damage from the delay." *Id.*

Here, when plaintiff's representatives filed the lost luggage claim, they informed defendant of plaintiff's "critical need to receive La Ballata in time to show it at the film festival on November 20, 1991." Curti aff. ¶ 5. Furthermore, an internal TWA telex acknowledges that TWA "delivered bags one day too late to make the projection of [plaintiff's] movie," and that the local newspaper had run a story on the "vanishing Italian movie." Curti aff. Ex. B. It is thus clear that defendant had notice of plaintiff's claim that it had suffered a loss due to the delay in arrival of the film. Therefore, plaintiff did not need to file a second claim after having received the luggage.

Accordingly, defendant's motion to dismiss on the ground of failure to file a timely written notice of claim is denied.

### D. *Limited Liability Under The Warsaw Convention*

 Plaintiff moves for summary judgment on the issue of whether the limited liability provision of the Warsaw Convention is applicable in this case. Pursuant to Article 22(2) of the Convention, "[i]n the transportation of checked baggage ... the liability of the carrier shall be limited to a sum of 250 francs per kilogram." 49 U.S.C. § 40105, note, art. 22(2).

As noted above, plaintiff concedes that the Warsaw Convention generally applies to its claim. However, plaintiff asserts that defendant cannot avail itself of the limited liability provision because defendant failed to list the weight of plaintiff's baggage on the baggage checks. Article 4 of the Warsaw Convention, which governs baggage checks, states in relevant part that:

(3) The baggage check shall contain the following particulars:

. . . . .

(d) The number of the passenger ticket;

. . . . .

(f) The number and weight of the packages;

. . . . .

(h) A statement that the transportation is subject to the rules relating to liability established by this convention.

(4) ... if the baggage check does not contain the particulars set out at (d), (f) and (h) above, the carrier shall not be entitled to avail himself of those provisions of the convention which exclude or limit his liability.

49 U.S.C. § 40105, note, art. 4.

As the court stated in *Vekris v. Peoples Express Airlines*, 707 F.Supp. 675 (S.D.N.Y. 1988):

Travelers must be notified of the exact weight of their baggage so that they will know the limit of the airline's liability. Since the effect of the Convention is to

keep the liability of the airlines artificially low, it is not unreasonable to require that carriers comply with the strict requirements of Article 4 before availing themselves of the liability limits.

*Id.* at 678. However, in *Republic Nat. Bank of N.Y. v. Eastern Airlines,* 639 F.Supp. 1410 (S.D.N.Y.1986), *aff'd,* 815 F.2d 232 (2d Cir. 1987), the district court "eschewed a literal reading [of Article 4] in favor of a more practical approach." *Id.* at 1414. Examining the carrier's failure to record the weight of the plaintiff's luggage on the baggage check, the court found that neither of the two purposes of this provision was undermined by the absence of the weight. With respect to fixing the amount of the carrier's liability if the baggage is lost, the court noted that the carrier had a tariff on file with the Civil Aeronautics Board which provided that, if the weight was not recorded on the baggage check, "the weight of each piece would be deemed to be the maximum allowable weight. Accordingly, there is no difficulty in fixing the extent of [the carrier's] liability under the Convention." *Id.* at 1416 (internal citation omitted). With respect to the second purpose of the weight-listing requirement—enabling the passenger to calculate the carrier's potential liability so as to decide whether to purchase insurance for the baggage—the court found that the passenger, a courier service that delivered large amounts of currency to foreign countries, "knew the approximate weight of the bag, was on notice of the liability limitations of the Convention, and certainly was aware of the high value of the bag's contents. Therefore, it had all the information it needed to determine whether to purchase insurance ..." *Id.*

The Second Circuit affirmed the district court's decision. *Republic Nat. Bank of N.Y. v. Eastern Airlines,* 815 F.2d 232 (2d Cir. 1987). The court found that the reasoning in *Exim Industries v. Pan American World Airways,* 754 F.2d 106 (2d Cir.1985), which held that "insubstantial and non-prejudicial" omissions to an air waybill under Article 8 of the Warsaw Convention did not prevent the carrier from claiming limited liability, also governed in the case of Article 4 baggage checks. *Republic,* 815 F.2d at 237. However, the court limited the extension of *Exim* to

the facts of the case, stating: "we hold that where, as here, the traveler is more like a commercial shipper than the typical airline passenger, our analysis in *Exim* applies to claims under Article 4 of the Warsaw Convention." *Republic* at 237. It is not clear whether the Court of Appeals' statement was intended to set forth a sole exception to strict interpretation of the Article 4 requirements—in the case of commercial shippers—or rather whether the court was simply reaching the only exception that it had to reach on the facts of that particular case and leaving for another day the question of whether this exception should be given broader application.

Two recent decisions in this court have examined the issue of "insubstantial and non-prejudicial" omissions to baggage checks where the passenger was not a commercial traveler. In *Siben v. American Airlines,* 913 F.Supp. 271 (S.D.N.Y.1996), Judge Sweet held that "[d]efendant's effort to characterize the Sibens as sophisticated travelers and thus subject them to the more lenient interpretations of Article 4 that are applied to claims of commercial travelers, are unavailing." *Id.* at 277 (citing *Republic Nat. Bank of New York v. Eastern Airlines,* 815 F.2d 232, 237 (2d Cir.1987)). Judge Sweet stated that "[w]hile it is true that Siben is a lawyer and has had his luggage delayed by American in the past, this does not transform him into a commercial passenger of the sort contemplated in the *Republic* line of cases." *Id.* at 277. The court then held that the limited liability provisions of the Warsaw Convention did not apply, where the baggage check did not meet the "number and weight of packages" requirement of Article 4(3)(f). *Id.* at 277–78.

However, in *Tseng v. El Al Israel Airlines, Ltd.,* 919 F.Supp. 155 (S.D.N.Y.1996), Judge Stanton examined a claim for damage to baggage and found that the limited liability provision of the Warsaw Convention applied, even though there was "no evidence showing how much [plaintiff's] suitcase weighed." *Id.* at 160. Judge Stanton found that "[w]here the weight of a passenger's suitcase is not noted on the baggage check, the weight may be based on the maximum allowable weight

as set forth in the airline's tariff." *Id.* (citing *Republic Nat. Bank of New York v. Eastern Airlines,* 639 F.Supp. 1410, 1411 (S.D.N.Y. 1986)). While the court did not address the issue directly, the facts support the conclusion that the plaintiff was a "typical airline passenger" and not a "commercial traveler."

This Court thus faces two issues with respect to limited liability in this case. First, is plaintiff more like a commercial traveler or a typical airline passenger? Second, did the Second Circuit in *Republic* mean to restrict its holding to commercial shippers, or does the reasoning behind the court's decision apply in the case of non-commercial travelers, as Judge Stanton found in *Tseng?* The Court is not willing to answer either of these questions on the record as it now exists, where neither party has submitted sufficient evidence to allow a determination of where in the range between "sophisticated commercial traveler" and "typical airline passenger" plaintiff falls, and where defendant has not even briefed the issue of limited liability.

Accordingly, plaintiff's motion for summary judgment on the issue of limited liability is denied without prejudice to renew. The Court will hold a conference in this matter at 4:00 p.m. on Wednesday, September 18, 1996 at 500 Pearl Street, Courtroom 15C, to discuss the possibility of further discovery on the above-referenced issue.